419 S.E.2d 1

STATE of West Virginia ex rel. Eric V.
JOHNSON and Sandra J. Johnson,
his wife, Petitioners,

v.

The Honorable Callie TSAPIS, Judge of
the Circuit Court of Brooke County;
Hitachi, Ltd., a foreign corporation;
and Wheeling–Nisshin, Inc., a corpora-
tion, Respondents.

No. 21008.

Supreme Court of Appeals of
West Virginia.

Submitted April 7, 1992.

Decided June 1, 1992.

Raymond A. Hinerman, Hinerman & Fa-
hey, Weirton, for petitioners.

Scott W. Blass, Bachermann, Hess, Bach-
mann & Garden, Wheeling, Brian D. Sieve,
Kirkland & Ellis, Chicago, Ill., for Hitachi,
Ltd., Inc.

Elba Gillenwater, Jr., Seibert, Kasserman, Farnsworth, Gillenwater, Glauser & Richardson, Wheeling, for Wheeling–Nisshin.

WORKMAN, Justice.

Petitioners Eric Johnson and Sandra Johnson seek a writ of prohibition to prevent the enforcement of a protective order issued by the Circuit Court of Brooke County. Having determined that the Honorable Callie Tsapis did not abuse her power in issuing a protective order in the underlying products liability action, we deny petitioners' request for a writ of prohibition.

As a result of a workplace injury sustained by Eric Johnson on October 9, 1989, petitioners instituted a civil action on December 21, 1990, against respondents Wheeling–Nisshin, Inc., Mr. Johnson's employer, and Hitachi, the manufacturer of the product which allegedly caused Mr. Johnson's injuries. In their civil action, petitioners alleged claims based on products liability and breach of warranty. On April 5, 1991, petitioners served their first set of discovery requests on Hitachi seeking work orders, blueprints, technical bulletins, and other diagrams detailing the operation and design of the squeeze roll which allegedly caused Mr. Johnson's injuries.

By letter dated April 26, 1991, Hitachi's counsel informed petitioners' counsel that he objected to producing documents responsive to the discovery requests prior to the entry of an appropriate protective order. Petitioners' counsel indicated to Hitachi's counsel that he did not normally object to protective orders, but would like to see a proposed draft before further comment. After reviewing the proposed protective order prepared by Hitachi, petitioners' counsel stated by letter dated June 19, 1991, that he would not approve the proposed protective order based on his opinion that the order as drafted was "overly broad," but he further indicated that he had "no problem at all with an Order that briefly provides that your trade secrets and confidential information shall remain confidential." In a subsequent letter dated July 8, 1991, petitioners' counsel advised Hitachi regarding the terms to which they would agree. Petitioners would "acknowledge that there may be trade secrets or confidential information which will be provided in the discovery process" and that, following Hitachi's identification of such trade secrets or confidential information, petitioners would agree that such information be kept secure in the circuit court clerk's office.

When the parties could not resolve their disputes regarding the terms of an appropriate order, Hitachi filed a motion with the circuit court on August 9, 1991, seeking the court's entry of a protective order. Following two hearings and the circuit court's review of proposed orders submitted by petitioners and Hitachi, the circuit court issued an order dated December 12, 1991, which adopted verbatim the terms of the protective order drafted by Hitachi. Petitioners seek to be relieved from compliance with the protective order entered by the circuit court.

Like any well-drafted protective order, the order at issue identified which documents or information could be categorized as confidential and the procedure for designating such documents as confidential. Consistent with cases involving trade secrets, the order limited the use of materials designated as confidential to the underlying lawsuit. Finally, the order provided a mechanism for the parties to bring any objection regarding disclosure of discovery materials to the circuit court for resolution.

Rule 26(c)(7) of the West Virginia Rules of Civil Procedure provides for the issuance of a protective order restricting disclosure of a party's trade secrets and other confidential information:

> Upon motion by a party ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (7) That a trade secret or other confidential research, development, or commercial information

not be disclosed or be disclosed only in a designated way.

That restrictions may be placed on the use of confidential information disclosed through discovery is well-established.

Even when discovery is allowed, the courts usually impose conditions intended to protect the possessor of the asserted trade secret from use of the secret for purposes other than the litigation, and from wholesale dissemination. Thus, the courts have limited disclosure of the information obtained through discovery to party's counsel and such others necessary for preparation of the action.

4 James W. Moore et al., *Moore's Federal Practice* ¶ 26.60[4], at 26–214 to –215 (2d ed. 1991) (footnote omitted).

In seeking the writ of prohibition, petitioners rely primarily on the "good cause" requirement of Rule 26(c). Specifically, petitioners assert that Judge Tsapis entered the protective order based solely on "the bald assertions of counsel." In response to this contention, Hitachi posits that the court did not require an evidentiary showing of "good cause" based on its position that petitioners had previously conceded that "much of the information they were seeking constituted trade secrets." Not having a transcript reflecting the proceedings below, we are forced to make a ruling as to the "good cause" showing based on the limited record before us. In reviewing the procedural history of the protective order and its eventual issuance, it appears to this Court that there was little disagreement among the parties regarding the need for a protective order for the purpose of protecting both trade secrets and other confidential information pertaining to the machinery which allegedly caused Mr. Johnson's injuries. From the correspondence between the parties which has been made a part of the record in this case, it is more than apparent that the terms of the protective order rather than the need for its issuance were the focus of the parties' dispute.

■ In deciding whether the circuit court had proper grounds for entering the protective order, we follow the court's decision in *United States v. International Business Machines Corp.*, 67 F.R.D. 40 (S.D.N.Y.1975), [hereinafter referred to as *I.B.M.*] to rely on the factors set forth in Section 757 of the Restatement of Torts as a test for determining whether a protective order should be issued with respect to commercial information which may rise to the level of a trade secret. *See id.* at 46–47. Accordingly, the following six-factor test should be applied in determining whether there is "good cause" pursuant to Rule 26(c)(7) of the West Virginia Rules of Civil Procedure to issue a protective order:

(1) the extent to which the information is known outside of the defendant's business;

(2) the extent to which it is known by employees and others involved in the defendant's business;

(3) the extent of the measures taken by the defendant to guard the secrecy of the information;

(4) the value of the information to the defendant and competitors;

(5) the amount of effort or money expended by the defendant in developing the information; and

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*See I.B.M.*, 67 F.R.D. at 47.

■ While not submitted in evidence at the circuit court proceedings, Hitachi has submitted the affidavit of one of its engineers in an ex post facto attempt to show compliance with the *I.B.M.* standard. The affidavit of Mr. Hitoshi Ohkoshi avers that:

(1) the design drawings and other information Petitioners seek are not publicly available and are not known to anyone outside of Hitachi and Wheeling–Nisshin, both of whom are required to maintain them in confidence;

(2) only a limited number of Hitachi personnel know the contents of the documents at issue;

(3) Hitachi has taken numerous substantial, explicit, and costly steps to maintain the confidentiality of the documents in question;

(4) the information is of great economic value both to Hitachi and its competitors; (5) Hitachi has expended considerable sums of money over the course of thirty years developing the information its seeks to protect; and (6) the information in question cannot be acquired or duplicated by others without substantial expenditures of capitol and resources.

The information contained in the Ohkoshi affidavit addresses each of the elements of the six-part *I.B.M.* standard which we have adopted as the test for the "good cause" requirement of Rule 26(c). The fact that this affidavit was not introduced in evidence in the proceedings below is of little or no moment since this Court remains firm in its opinion that the dispute brought to the circuit court centered not on the need for the issuance of a protective order, but on the terms of a protective order. Nonetheless, the Ohkoshi affidavit satisfies any lingering question that Hitachi has established the "good cause" prerequisite for obtaining a protective order.

■ As an additional ground for seeking a writ of prohibition, petitioners assert that the protective order as entered by the circuit court is burdensome. Petitioners' primary objection on the grounds of burden appears to be the aspect of requiring petitioners' expert witnesses to comply with the terms of the protective order. What petitioners are really complaining about is the requirement that they first disclose to Hitachi the identity of any expert witness whom they wish to provide access to information which qualifies as confidential or super-confidential pursuant to the protective order and the further requirement that the expert witness not disclose such information nor make copies of such information except as needed for trial purposes. The order seeks to permit the identification of confidential and trade secret information and to prevent that information from being disseminated for use other than in connection with the underlying civil action. Numerous courts have recognized the discretion imposed on a trial court to place limitations upon the disclosure of trade secrets or other confidential information. *See 4 Moore* et al., *supra* ¶ 26.75 at 26–486 to –488 and cases cited therein; *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986) (upon a showing of " 'good cause,' the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained"). While the protective order is unquestionably drafted in legalese and is therefore more verbose than necessary, we find petitioners' objection that the protective order is burdensome to be meritless.

■ In approving the protective order at issue, we note that the order provides a mechanism to resolve any disputes regarding whether a particular document is subject to the terms of the order. The order clearly states that upon objection by the non-producing party, any dispute regarding disclosure is to be resolved by court order. Having fully reviewed this procedural matter, we can find no evidence that the circuit court abused its discretion in issuing the protective order.

For the reasons stated in this opinion, the writ of prohibition requested by petitioners is hereby denied.

Writ denied.