455 S.E.2d 788

**Shelley S. McDOUGAL and David L. McDougal, Plaintiffs Below, Appellants,**

v.

**Julie K. McCAMMON, M.D., Defendant Below, Appellee.**

No. 22215.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided Feb. 17, 1995.

---

Frank Venezia, E. William Harvit, Shinaberry, Meade & Venezia, Charleston, for appellants.

Sprague W. Hazard, Dino S. Colombo, Jacobson, Maynard, Tuschman & Kalur, Morgantown, for appellee.

Jolyn W. McCamic, McCamic & McCamic, Wheeling, for amicus curiae West Virginia Trial Lawyers Ass'n.

CLECKLEY, Justice:

In this medical malpractice case, the plaintiffs, Shelley S. and David L. McDougal, appeal from a jury verdict in favor of the defendant, Julie K. McCammon, M.D. The plaintiffs claimed that as a result of the defendant's negligent performance of a hysterectomy, Mrs. McDougal suffered perma-

nent nerve damage. The jury returned a verdict in favor of the defendant.

The sole issue before this Court is whether the trial court improperly admitted a portion of a video surveillance tape of Shelley McDougal. Because the video tape was not produced or its existence revealed during discovery, the plaintiffs contend they were surprised and ambushed by its use. Our review of the record reveals that the admission of the video tape was only harmless error. Accordingly, for reasons described herein, the judgment of the circuit court is affirmed.

## I.

### FACTS

In February, 1989, Mrs. McDougal went to the defendant's office with complaints of vaginal discharge and pelvic pain for one month's duration. The defendant prescribed ampicillin for ten days and told Mrs. McDougal to take Tylenol for pain. Mrs. McDougal remained in the defendant's care and on March 22, 1989, was admitted to United Hospital Center for a D & C and diagnostic laparoscopy.

On July 27, 1990, Mrs. McDougal was admitted to United Hospital Center for a total abdominal hysterectomy with bilateral salpingo-oophorectomy and lysis of adhesions. The defendant claims she used proper surgical techniques by using a self-retaining retractor to keep the surgical field clear of other abdominal organs. After surgery, Mrs. McDougal complained of left leg numbness with tingling, right leg numbness starting from the knee down to the ankle on the anterior portion of her leg, and numbness in her right thigh. Mrs. McDougal was later seen by a neurologist and then referred to West Virginia University. Eventually, Mrs. McDougal was diagnosed as having femoral and obturator neuropathy.

The plaintiffs assert the defendant failed to follow proper preventive care during surgery which resulted in permanent damage to Mrs. McDougal's femoral and obturator nerves. To the contrary, the defendant argues damage to these nerves is a recognized complication that can occur without any negligence.

The plaintiffs instituted a civil action against the defendant. In addition to Mrs. McDougal's malpractice claim, Mr. McDougal brought a loss of consortium action against the defendant. At trial, part of Mrs. McDougal's testimony concerned her pre- and post-surgical conditions and the limitations she experienced from her purported injuries.

On cross-examination, defense counsel focused on Mrs. McDougal's claims of physical limitations. In response to a question about whether she had ever carried a 20 to 25 pound box down her steps since her injury, Mrs. McDougal told defense counsel she could not remember. Following a series of questions about her limitations, defense counsel asked for a bench conference and told the trial judge he wanted to present a video surveillance tape of Mrs. McDougal carrying a large box down her steps in order to impeach Mrs. McDougal's testimony concerning the extent of her injuries. The trial judge allowed defense counsel to present the video tape after a protracted argument considering the admissibility of the video tape and whether the tape should have been disclosed during discovery. After defense counsel presented the video tape and finished cross-examining the witness, plaintiffs' counsel had an opportunity to ask Mrs. McDougal about the video tape.

The jury eventually found for the defendant, and the plaintiffs appeal the jury's verdict. The plaintiffs argue the admission of the video tape "unfairly and substantially prejudiced" them by damaging the jury's perception of Mrs. McDougal.

## II.

### DISCUSSION

The plaintiffs argue the video tape should have been excluded because (a) it was not revealed during discovery and instead was used to ambush and surprise the plaintiffs; (b) it was improper impeachment evidence; and (c) the prejudicial effect of the tape substantially outweighed its probative value. The defendant contends she was not obligated to reveal the video tape in response to a discovery request. She argues the video

tape was protected from discovery under the "work product" doctrine. Alternatively, even if the video tape is not considered work product, the defendant argues the sole purpose of the video tape was to contradict Mrs. McDougal regarding the extent of her injuries and, as such, the probative value of the tape outweighed the prejudicial effect.[1]

In response to a discovery request of the plaintiffs as to the existence of any photographs, moving or still, of Mrs. McDougal, the defendant answered none existed.[2] No supplementation was ever made of this answer prior to trial. In fact, the existence of the video tape was not revealed until the cross-examination of Mrs. McDougal.[3] Obviously, the defendant's answer to the interrogatory and the motion to produce are directly inconsistent with the video tape that was produced at trial.

On cross-examination, Mrs. McDougal was asked whether she could perform certain acts such as lifting boxes weighing 15 to 20 pounds:

"Q. Well, let me ask you this. Could you carry a little laundry without your brace at home?

"A. I—carry anything.

"Q. Could you carry with both your hands?

"A. With both my hands.

"Q. Fifteen (15) or twenty (20) pounds.

"A. On a good day, maybe. Depending on how I feel. If my back hurts or I hurt here or there. No, I cannot.

\* \* \* \* \* \*

"Q. So there are times when you can walk up and down the stairs of your home by yourself without the brace and without holding onto somebody or something.

"A. Yes. As I said before, with limitations. I know what I can do and how far to push myself, Sir.

"Q. You testified you had seven (7) or eight (8) steps at your home. Are you telling us you can walk up those steps without assistance, without the brace?

"A. Depending on what I have done, yes.

"Q. Could you carry heavy objects down the steps using both hands? Walking down those steps not holding on to anything?

"A. That I—heavy as in what are you referring to?

"Q. A box or groceries?

"A. I don't think I'd carry groceries.... My husband—.

"Q. I'm not—is that what you want to say you can't.

"A. No. What I want to say is depending on, I guess, how heavy the box is, the size of the box as to whether I could do it or not.

Additionally, the plaintiffs requested production of photographs:
"*Request* 19. Please produce print copies, not xerox copies, at plaintiff's expense, of all photos relevant to this cause of action.
"*Response:* At the present time, this defendant is not aware of any relevant photographs in this cause of action."

1. The West Virginia Trial Lawyers Association submitted an *amicus curiae* brief arguing that the video tape should have been disclosed prior to trial and that such surveillance tapes are not attorney work product.

2. The interrogatory and answer appear below:
"30. Were any photographs taken, or directed to be taken, by you, or anyone on your behalf, of plaintiff prior to, in the course of, or subsequent to your treatment of plaintiff?
**ANSWER:** No.
"31. If so, for each photograph, state:
a. The date and place it was taken;
b. The identity of the person who took it;
c. The reason it was taken;
d. Whether it is moving, or still;
e. A description of the view taken of plaintiff; and
f. The name and address of each person who has custody of it.
**ANSWER:** Not applicable."

3. In addition to the West Virginia Rules of Civil Procedure requiring supplementation, the plaintiffs included in their instructions to the interrogatories the following statement: "6. These Interrogatories and Requests for Production shall be continuing and supplemental answers shall be required if defendant, directly or indirectly, obtains further information of the nature sought herein between the time answers are served and the time of the trial."

"Q. Is it fair to say that you could not carry a heavy box, twenty (20) to twenty-five (25) pounds down your steps at home.

"A. That I cannot say."

The cross-examination continued on the subject of whether the plaintiff could perform her routine daily household chores without wearing her knee brace. After the plaintiff gave evasive answers to these questions, defense counsel requested a bench conference and for the first time revealed that he had conducted "video taped surveillance of the Plaintiff that is part of our work product[.]" Following a lengthy and nonproductive discussion, the trial court permitted the tape to be used over the plaintiffs' objection.[4] On appeal, the plaintiffs contend that the admission of the tape constituted reversible error.

■ Rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. *Grillis v. Monongahela Power Co.*, 176 W.Va. 662, 346 S.E.2d 812 (1986);[5] *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983). The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. As the drafters of the rules appear to recognize, evidentiary and procedural rulings, perhaps more than any others, must be made quickly, without unnecessary fear of reversal, and must be individualized to respond to the specific facts of each case. *See generally* Thomas M. Mengler, *The Theory of Discre-*

tion in the Federal Rules of Evidence, 74 Iowa L.Rev. 413, 415 (1989). Thus, absent a few exceptions, this Court will review all aspects of the circuit court's determinations under an abuse of discretion standard. *See State ex rel. Johnson v. Tsapis*, 187 W.Va. 337, 419 S.E.2d 1 (1992). We now will address each of the plaintiffs' contentions in turn.

A.

*Admissibility of the Video Tape As Impeachment Evidence*

The plaintiffs contend that the video tape was not admissible as "impeachment" evidence because the predicate foundation had not been adequately laid. They suggest a fair review of the whole record does not reveal that Mrs. McDougal at any time indicated she was incapable of doing the acts depicted on the video tape. Without this foundation, the plaintiffs argue there is nothing to impeach. This argument is without merit.

■ Unfortunately, the parties and the trial court mistakenly considered the video tape as a prior inconsistent statement and limited their discussion to only those rules and principles governing prior statements. The video tape is not a "statement" within the contemplation of the West Virginia Rules of Evidence,[6] and the jurisprudential rules we have formulated regarding prior statements are not necessarily applicable to this situation.[7] The method of impeachment here.

---

**4.** The plaintiffs' trial objections were extremely vague and were not rule specific. It appears the objections can be summarized into four parts: (a) the video tape was not admissible as impeachment evidence because the plaintiff never denied committing the acts covered in the video tape and, therefore, the tape is hearsay; (b) the existence of the tape was not disclosed despite the fact that this information was specifically requested during discovery; (c) the tape was "prejudicial"; and (d) the photographer was not listed as a witness. It is apparent from the brief of the plaintiffs that the arguments as to hearsay and the failure to list the photographer as a witness have been abandoned.

**5.** It is well settled that decisions regarding the admission and exclusion of evidence are peculiarly within the province of the trial court and

are not to be reversed on appeal absent an abuse of discretion. Thus, evidentiary decisions of a trial court are entitled to substantial deference.

**6.** Rule 801(a) of the West Virginia Rules of Evidence defines statement as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by [the person] as an assertion."

**7.** The plaintiffs in their brief cite such cases as *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990); *State v. Cochran*, 172 W.Va. 715, 310 S.E.2d 476 (1983); and *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975), to support the notion that the trial court should not have admitted the video tape because Mrs. McDougal never denied the facts the video tape sought to prove. The plaintiffs are misguided. These cases deal

is more closely akin to contradiction or rebuttal. To be specific, what the defendant sought to do was contradict or rebut the testimony of Mrs. McDougal with extrinsic evidence of a video tape reflecting her conduct. Unlike Rules 608(b) and 613 of the West Virginia Rules of Evidence, there is no specific rule governing the admissibility of contradictions. We specifically stated in *State v. Derr*, 192 W.Va. 165, 178, 451 S.E.2d 731, 744 (1994): "When specific authority to resolve an evidentiary issue under the Rules is absent, admissibility must be determined by reference to the general provisions governing the admission of relevant evidence." Of course, the rules referred to are Rules 401 through 403 of the West Virginia Rules of Evidence.

As suggested above, we need only determine whether the video tape was relevant; we find it was. Rule 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Rule 401, evidence having *any* probative value whatsoever can satisfy the relevancy definition. Obviously, this is a liberal standard favoring a broad policy of admissibility. For example, the offered evidence does not have to make the existence of a fact to be proved more probable than not or provide a sufficient basis for sending the issue to the jury.

▇ The video tape was admitted on the issue of damages. There can be no doubt that a video tape showing Mrs. McDougal performing her daily, ordinary chores is probative of the extent of her injuries. The video tape became particularly relevant in light of the testimony of Mrs. McDougal that she was unable to carry on her daily functions as a result of her injuries.

▇ Our prior cases have permitted the attacking party to admit evidence that, if credited by the jury, would raise doubts about a prior witness's testimony. Under common law, counterproof offered to contradict a witness was clearly admissible unless the proponent of the witness could show that the counterproof should be excluded because of unfairness or to prevent excursions into collateral matters.[8] "Subject to such limits, it is worth noting that impeachment by contradiction may properly attack all kinds of testimony, whether given on direct or on cross, and indeed all evidence, as well as inferences suggested by evidence or arguments of counsel interpreting the evidence." Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 6.58 at 662-1 (1994).

▇ Accordingly, we find the video tape was relevant to the issue of damages and, barring any other procedural or evidentiary defect, was admissible to contradict and impeach Mrs. McDougal's testimony. We further find the only threshold foundation necessary to admit this form of evidence is relevancy and authenticity. There is no objection on the ground of authenticity preserved in the record. The balance of prejudice versus probative value required by Rule 403 is reviewed for a clear showing of abuse of discretion. *See State v. Derr, supra*, 451 S.E.2d at 744. We find no abuse of discretion under these facts.

### B.

### Discovery Violations

▇ As the plaintiffs correctly point out, one of the purposes of the discovery

---

with the foundational requirements necessary to prevent a party from offering hearsay under the ruse of a prior inconsistent statement. A party should not be able to admit inadmissible hearsay, even for purposes of impeachment, where there is nothing said to impeach. This is what was meant in Syllabus Point 2, in part, of *Cochran* when we stated that the "prior statement" rule "'may not be used as a ruse for introducing inadmissible evidence.'" *Quoting* Syl. pt. 2, in part, *State v. Spadafore, supra*.

Where the extrinsic evidence used is not in the nature of a statement, the dangers of sneaking in hearsay through the backdoor are not present

and the foundational requirements relied upon by the plaintiffs have no application. In this latter situation, as we have in this case, the controlling rules are those dealing with relevancy. Even if we treated the video tape as a "statement," the impeachment rules would not apply because the video tape is admissible as substantive evidence under Rule 801(d)(2) of the West Virginia Rules of Evidence regarding party admissions.

8. Because we find the video tape was relevant, the plaintiffs are now foreclosed from arguing the evidence was on a collateral issue.

process under our Rules of Civil Procedure is to eliminate surprise. Trial by ambush is not contemplated by the Rules of Civil Procedure. Nevertheless, a new trial will not be granted unless the moving party was prejudiced. In order to prevail on appeal, the plaintiffs must show the admission of the video tape was error under prevailing law and the failure to exclude the video tape is inconsistent with substantial justice. We find the failure to supplement the discovery requests, as required by Rule 26(e) of the Rules of Civil Procedure, is a violation of both the letter and spirit of one of the most important discovery rules.

 Instead of seeking a protective order from the trial court, counsel for the defendant made a unilateral determination that he was not required to supplement the answers to discovery on the ground of the "work product" doctrine. We find this argument disingenuous. First, the work product exception does not necessarily prevent discovery of the video tape.[9] Second, even if the work product doctrine applied, it would only have prevented the "production" of the video tape. The issue before this Court is not solely that of production, but of permitting an untruthful answer to an interrogatory regarding the mere existence of the video tape to remain without any effort to supplement or otherwise correct. Clearly, the procedure followed by the defendant did not comport with the broad purpose of our discovery rules in encouraging and demanding that parties disclose and supply relevant evidence upon request.[10] A full, free, and open

9. The defendant admits she may have had a duty to disclose the existence of the video tape, but argues her failure did not harm the plaintiffs because, as work product, the plaintiffs would not have been entitled to the production of the video tape. Obviously, the defendant cannot consider this a serious argument. Knowledge of the mere existence of this tape would have substantially contributed to the quality of the plaintiffs' trial strategy and their specific preparation of their star witness, Mrs. McDougal. Furthermore, by not disclosing this information, the defendant effectively prevented the plaintiffs from challenging the "work product" defense through a motion to compel.

As a general proposition, any material is subject to discovery unless: (1) its discovery is categorically prohibited or made conditional by the discovery rules, or (2) the matter is so obviously irrelevant or the mode of discovery so ill-fitted to the issues of the case that it can be said to result in "annoyance, embarrassment, oppression, or undue burden or expense." Fleming James, Jr., Geoffrey C. Hazard, Jr., & John Leubsdorf, *Civil Procedure* § 5.8 at 249 (4th ed. 1992). One of the categorical limitations placed on discovery by the West Virginia Rules of Civil Procedure is that a party may discover certain trial preparation material only on a showing of compelling necessity. *See* W.Va.R.Civ.P. 26(b)(3). The defendant overlooks the point made by Chief Justice Neely in *State ex rel. Chaparro v. Wilkes*, 190 W.Va. 395, 438 S.E.2d 575 (1993) to the effect that although the work product doctrine creates a form of qualified immunity from disclosure, it does not label materials as "privileged" and thus outside the scope of discovery under Rule 26(b)(1). In essence, absent materials dealing with mental impressions, conclusions, opinions, or legal theories, a party through the discovery process may be permitted to obtain materials protected by the work product doctrine upon a showing of " 'substantial need' " for the material in the sense that he cannot obtain the same " 'without undue hardship.' " The determination of whether the necessary showing has been made is one for the trial court. *Chaparro*, 190 W.Va. at 398, 438 S.E.2d at 578, *quoting In re Markle*, 174 W.Va. 550, 556–57, 328 S.E.2d 157, 163 (1984).

In *In re Markle, supra*, we recognized the doctrine of work product could extend to include the work of those other than attorneys. Although it is true that work product is essentially evidence prepared for trial, it is not such an elastic concept that video surveillance tapes suddenly, because of work product, become protected from discovery merely because an attorney decides to investigate and film a video tape. If we were to adopt the defendant's criteria, anything in an attorney's office could be work product and not subject to the discovery rules. This adoption would completely defeat the purpose behind discovery.

10. In the instant case, the defendant's tactics border on misconduct. Once the defendant became aware of the existence of the video tape, she should have pursued permissible channels, such as giving the plaintiffs notice of the newly obtained evidence, and moved for a protective order under Rule 26(c) of the Rules of Civil Procedure to prevent the tape from being released to the plaintiffs. Rather, the defendant allowed an untruthful response to remain uncorrected and, by doing so, implicitly stated the video tape did not exist. We are further convinced that counsel for the defendant understood the questionable validity of his "work product" argument and, therefore, prepared prior to trial a memorandum of law on this subject to be submitted to the trial court at the critical time. We believe this memorandum should have been served on the plaintiffs prior to trial and should have been attached to a motion for a protective order.

disclosure of relevant facts which would expedite and promote the resolution of the disputed factual issue did not prevail in this case. By failing to provide this information through discovery, the defendant denied the plaintiffs an opportunity to present their case in a manner which would allow Mrs. McDougal to preserve and protect her credibility.

■ The fairness and integrity of the fact-finding process is of great concern to this Court; and, when a party fails to acknowledge the existence of evidence that is favorable or adverse to a requesting party, it impedes that process. Normally, when this type of violation impacts the outcome of the trial, this Court will require redress in the form of a new trial. As a general rule, wrongfully secreting relevant discovery materials makes it inequitable for the withholder to retain the benefit of a favorable verdict.

■ Unquestionably, the trial court possesses the inherent authority to impose sanctions for failure of a party to supplement discovery as required by Rule 26(e) of the Rules of Civil Procedure. One such sanction authorized by this Court is the exclusion of evidence.[11] In Syllabus Point 5, in part, of *Prager v. Meckling, supra,* we stated factors to be considered in determining whether the failure to supplement discovery requests should require the exclusion of evidence relating to the supplementary material. These factors include:

> " '(1) the prejudice or surprise in fact of the party against whom the evidence is to be admitted; (2) the ability of the party to cure the prejudice; (3) the bad faith or willfulness of the party who failed to supplement discovery requests; and (4) the practical importance of the evidence excluded.' " (Citations omitted).

*See also First Nat'l Bank in Marlinton v. Blackhurst,* 176 W.Va. 472, 345 S.E.2d 567 (1986); *State v. Bass,* 189 W.Va. 416, 432 S.E.2d 86 (1993).

■ The trial court failed to apply or discuss any of the factors listed above. In fact, we find nothing in this record that suggests the trial court gave a definitive ruling on the issues presented. Rather than applying the *Prager* factors, it appears from the record that the parties and the trial court treated the issue as one of a prior inconsistent statement. The discretion that is normally given to a trial court's evidentiary decisions does not apply where "the trial court makes no findings or applies the wrong legal standard[.]" *State v. Farley,* 192 W.Va. 247, 253, 452 S.E.2d 50, 56 (1994). We, therefore, review and apply the *Prager* factors *de novo.*

■ For several reasons discussed below, we find the admission of the video tape was probably error, but the failure of the trial court to exclude the tape did not affect the outcome of the trial. There can be no doubt the video tape came as a surprise to the plaintiffs and was therefore "prejudicial" as to the damages claim. We also find the failure of the defendant to supplement was not inadvertent, but was willful. At the time of its admission, the video tape was of substantial practical importance to the proceedings. On the other hand, as we will discuss below, the plaintiffs had the ability to cure the prejudice, but did not avail themselves of those measures. Nevertheless, on balance we believe that the video tape should have been excluded primarily because of the wilfulness of the discovery violation.

■ We must now discuss whether the error was harmless. While the factors comprising the *Prager* test require an assessment from a perspective contemporaneous with the time of trial, the harmless error analysis must by necessity be evaluated from a hindsight perspective. In the realm of nonconstitutional error, the appropriate test for harmlessness articulated by this Court in *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct.

---

11. For cases in other jurisdictions discussing sanctions for discovery violations such as this one, see *Schultz v. Butcher,* 24 F.3d 626, 630 (4th Cir.1994) (new trial granted where party's behavior in not turning over discovery documents in its possession, whether intentional or accidental, constituted misconduct); *Erskine v. Consolidated Rail Corp.,* 814 F.2d 266, 272 (6th Cir.1987) (reversible error for the defendant to fail to turn over certain documents pursuant to discovery requests).

1081, 63 L.Ed.2d 320 (1980), is whether we can say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict and that the judgment was not substantially swayed by the error. The outcome of the harmless error analysis is fact specific. *See United States v. Grooms,* 2 F.3d 85, 89 (4th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1550, 128 L.Ed.2d 199 (1994). Applying these standards, we find the error to be harmless.

■ The video tape was admitted for the limited purpose of contradicting Mrs. McDougal's testimony as to the extent of her injuries. The jury had to resolve the issue of whether the defendant was negligent and thus liable for any injury that may have been caused. The question of damages would be relevant only had the plaintiffs prevailed on the liability issue. The plaintiffs failed to argue or give any suggestion as to how the video tape had any bearing on the issue of liability.[12] We believe that the absence of a showing that the video tape was significant on the liability issue rendered the error of admission harmless.[13]

■ In Syllabus Point 7 of *Torrence v. Kusminsky,* 185 W.Va. 734, 408 S.E.2d 684 (1991), we stated:

" 'A judgment will not be reversed because of the admission of improper or ir-

relevant evidence when it is clear that the verdict of the jury could not have been affected thereby.' Syllabus Point 7, *Starcher v. South Penn Oil Co.,* 81 W.Va. 587, 95 S.E. 28 (1918)."

More importantly, this Court has consistently held that where the plaintiff does not prevail as to liability, errors affecting damages are harmless "because, ... [the plaintiff is] not entitled to any damages." *Prager v. Meckling,* 172 W.Va. at 791, 310 S.E.2d at 857.[14]

■ Also, we find it significant that the plaintiffs failed to exercise options available to ameliorate or dilute any unfair surprise resulting from the use of the disputed video tape. The plaintiffs could have moved for a continuance or sought a recess to take whatever action was necessary before the trial continued. Instead, for reasons not fully disclosed to this Court, the plaintiffs chose to continue with the trial as part of their strategy. As the Fourth Circuit Court of Appeals in *DeBenedetto v. Goodyear Tire & Rubber Co.,* 754 F.2d 512, 518 (4th Cir.1985), stated where counsel decided not to move for a continuance, but rather proceed with trial: "They cannot now be allowed to alter retroactively their trial strategy." The same reasoning applies in the instant case. We explicitly hold that in order to preserve the claim of unfair surprise for appeal, the ag-

**12.** We recognize there are certain classes of errors that are of such an egregious nature that the verdict must be reversed even though the erroneous evidence was introduced for a limited purpose not before this Court on appeal. This is not such an error. We do not find the credibility of Mrs. McDougal to have possibly affected the finding by the jury on the liability issue. The crucial evidence on this issue came from the experts.

**13.** It must be noted that had the video tape been relevant to the liability issue, we would not hesitate to reverse the judgment of the trial court and remand for a new trial. The deliberate failure by the defendant not to supplement the discovery of such obviously pertinent requested materials in her possession is error of such a magnitude warranting a new trial.

**14.** The plaintiffs point out that the experts for both the plaintiffs and the defendant all agreed that Mrs. McDougal suffered nerve damage. However, it is conceivable that while the jury

believed Mrs. McDougal had permanent nerve damage, it felt the damage was an unfortunate complication of the surgery she underwent (as is argued by the defendant). In any event, we will not second guess a jury where there is clear evidence to sustain its verdict even with the presence of some prejudicial evidence. *See* Syl. pt. 2, *Vandetta v. Yanero,* 157 W.Va. 220, 200 S.E.2d 674 (1973) (an erroneous conclusion of law incorporated into a report and then admitted into evidence at trial found not reversible error where ample other evidence was in existence that supported the court's findings); *Lester v. Rose,* 147 W.Va. 575, 603, 130 S.E.2d 80, 98 (1963) (" 'where the verdict accords with both the law and the evidence, all errors committed in the course of the trial are rendered harmless.' I M.J., Appeal and Error, § 287"). In this case, it appears the jury evaluated the evidence presented and a finding in favor of either party could have been justified.

grieved party must at the very least move for a continuance or recess.[15]

In conclusion, we hold that although the admission of the video tape may have been error, because the video tape in dispute did not affect the question of liability, its admission was not reversible error. Accordingly, the verdict for the defendant is affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

---

**15.** As we suggested in *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 141, 454 S.E.2d 427, 435 (1994):

"Our cases and the West Virginia Rules of Evidence have declared an implicit preference for a continuance when there has been a discovery violation. *See* W.Va.R.Evid. 403 ('unfair surprise' is not listed as a ground for exclusion). *See State v. Barker*, 169 W.Va. 620, 623, 289 S.E.2d 207, 210 (1982) ('[e]ven if this were a "proper" case in which to claim surprise, the appellant failed to move for a continuance, and, therefore, waived his right to one'); *Martin v. Smith*, 190 W.Va. 286, 291, 438 S.E.2d 318, 323 (1993) ('even given that the admission of Dr. Adams' testimony prejudiced Dr. Smith's case, we find such prejudice far from incurable. Dr. Smith could have easily moved for a continuance in order to secure a comparable expert witness')."