# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John Wayne Walker,**
**Plaintiff below, Petitioner**

**vs.)  No. 18-1062** (Mineral County 16-C-45)

**Gregory Fazenbaker,**
**Defendant below, Respondent**

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John Wayne Walker, by counsel S. Ramani Pillai, appeals the Circuit Court of Mineral County's October 29, 2018, final order ruling in favor of Respondent Gregory Fazenbaker. Respondent, by counsel Daniel R. James and Nicholas T. James, filed a response. Petitioner filed a reply. On appeal, petitioner argues that he was denied due process of law, that the circuit court erred in the manner in which it dismissed his case, and that the circuit court erred in issuing its final order without allowing him an appropriate amount of time to respond with objections.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On or about June 23, 2014, petitioner drove to respondent's residence to question him regarding the whereabouts of Dixie Armbruster.[1] A fight ensued, and petitioner was injured. Due to these injuries, petitioner required over thirty stitches and surgery to repair his orbital bone and nose. Metal pieces were inserted into petitioner's face to help repair the injuries.

Petitioner filed a civil suit against respondent in July of 2016, alleging battery. Respondent filed his answer in August of 2016, adding counterclaims of assault and battery, malicious

---

[1]Ms. Armbruster is petitioner's ex-girlfriend and the mother of his two children. Respondent and Ms. Armbruster were dating at the time.

prosecution,[2] trespass, and intentional infliction of emotional distress. Petitioner amended his complaint to include a claim of "negligent self-defense." Prior to trial, petitioner took the deposition of William T. McClellan, M.D., a doctor who reviewed petitioner's injuries for the purpose of this litigation.

A bench trial commenced in October of 2018. Petitioner testified that on the night of the fight, he dropped his children off with Ms. Armbruster around 9:00 p.m., and then proceeded to a bar where he drank a few beers and watched a baseball game. Petitioner testified that he left the bar after midnight and started driving home. While crossing a bridge, petitioner noticed Ms. Armbruster driving towards him. The two stopped their vehicles on the bridge, and petitioner asked Ms. Armbruster where she was going at that time of night with the children asleep in the car. Petitioner testified that Ms. Armbruster replied that she "would do what she wanted" and continued on her way. Upset, petitioner decided to drive to respondent's residence to question him regarding Ms. Armbruster and where she was going. Petitioner stated that he parked in respondent's driveway and knocked on the door, but there was no response. Petitioner then left respondent's residence, but realized that he must have dropped his phone at some point. Petitioner returned to respondent's residence and eventually located his phone in the grass. About that time, respondent pulled into his driveway, but did not block petitioner's car. Petitioner testified that respondent asked "[w]hat the 'f' are you doing here?" and petitioner replied "[d]on't start with me." Then, respondent walked up the driveway and punched petitioner, who fell back into his truck. Petitioner stated that he stuck his arm and leg out to defend himself, but respondent proceeded to hit him "at least two, three, maybe four times in rapid punches." Following the punches, the fight ended, and petitioner and respondent spoke for about ten minutes before petitioner went home. Once at home, petitioner drank "so many" beers before calling his brother to transport him to the hospital to address injuries sustained in the fight. Regarding his injuries, petitioner testified that he "had over 30 some stiches," sustained a broken tooth and a broken nose, and required surgery to repair his orbital bone. Petitioner stated that the doctors "put three pieces of metal" under the eye and near the nose to repair the broken orbital bone.

Respondent testified that, upon pulling in his driveway, he saw petitioner standing by his truck. Respondent stated that he asked petitioner "[w]hat the hell are you doing in my driveway?" Petitioner replied, "[d]on't you f*cking start" and began advancing towards respondent, who was walking towards his house. Respondent testified that petitioner came towards him, pointing something at him.[3] As petitioner neared respondent, respondent knocked the object out of petitioner's hand and the two "engaged almost . . . like wrestlers would." Respondent testified that petitioner "dug into" and scratched the area behind his ears, prompting respondent to punch petitioner at least two times. Then, petitioner fell to one knee and the fight ceased at that time. Respondent stated that he might have punched petitioner as many as three times, but did not continue to hit him after he fell to his knee. Respondent agreed that he and petitioner spoke for approximately ten minutes after the fight and that petitioner brought up Ms. Armbruster.

---

[2]Respondent was criminally indicted as a result of the fight, but it appears that the case was dismissed and his record was expunged.

[3]Respondent testified that he did not know what the object was at the time of the fight. Later, he surmised it to be petitioner's phone.

Respondent noted that petitioner smelled of alcohol on the night of the fight. He testified that petitioner had confronted him at his house on two prior occasions and tailgated him very closely on another occasion.

Following respondent's testimony, the circuit court asked the parties if there was any other evidence to be presented. Petitioner responded that he desired to present the recorded deposition of Dr. McClellan, and respondent indicated that he desired to present the testimony of an alleged eyewitness. The circuit court instructed respondent to call his witness, but the witness could not be located. As such, the circuit court found that it did not need to hear Dr. McClellan's recorded deposition, stating

> [a]ll right. Well, I'm going to be honest with you. I'm going to find . . . in favor of the defense and dismiss[] all the counterclaims. You can appeal. You understand the ruling. I find that it could go either way. I understand [respondent's] situation. I understand [petitioner's]. The real problem with this is the injuries [petitioner] suffered. But I think everybody's paid enough and gone through enough, and I'm letting it go.

Respondent filed a proposed order on October 26, 2018, and the circuit court entered that order on October 29, 2018. Petitioner filed objections and his own proposed order on November 2, 2018, but the circuit court did not file an amended order. In the final order dismissing the case, the circuit court found that petitioner had a confrontational attitude and was intoxicated at the time of the fight. The circuit court made findings consistent with respondent's version of events and found that respondent had a legal right to be outside his home, was not engaged in unlawful activity, was not the aggressor, had every right to defend himself, and did not use excessive force. Petitioner appeals from the October 29, 2018, order dismissing his complaint.

This Court reviews the circuit court's order under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

On appeal, petitioner first argues that the circuit court erred in refusing to hear Dr. McClellan's recorded deposition. According to petitioner, his due process rights were violated because he was not afforded the opportunity to be fully heard. Petitioner notes that the circuit court's findings that respondent "had every right . . . to defend himself" and that he "did not use excessive force" are directly contradicted by the testimony of Dr. McClellan. Petitioner contends that if the circuit court had watched the deposition, it would not have ruled in favor of respondent. Upon our review, we find petitioner's argument to be without merit.

3

This Court has previously held that

> "[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 1, *State v. Gray*, 204 W. Va. 248, 511 S.E.2d 873 (1998). Here, the circuit court determined that it did not need to hear Dr. McClellan's recorded deposition following the testimony of petitioner and respondent. Both parties testified as to their version of events on the night of the fight. The circuit court ultimately found that respondent's version of events was more credible and that he was not liable for petitioner's injuries. In *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995), we found that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." Rule 52(a) of the West Virginia Rules of Civil Procedure further provides that, in all actions tried upon the facts without a jury, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." As such, we will not reassess the circuit court's credibility determination.

To the extent that petitioner contends that Dr. McClellan's testimony established that respondent's self-defense was excessive, we note that he cites to no portion of the record in support of his assertion. In fact, the record establishes that Dr. McClellan provided no testimony regarding whether respondent's actions were excessive. When asked whether he had any opinion regarding respondent's claim of self-defense, Dr. McClellan responded "I know nothing about the case, other than the CAT scan and the medical record." Accordingly, contrary to petitioner's claims, Dr. McClellan's testimony was irrelevant to the issue of whether respondent acted in self-defense and whether his actions were excessive. Although Dr. McClellan testified that petitioner's injuries were more severe than most injuries in typical fistfights, this testimony does not lend support to the issue of liability when considered in the context of Dr. McClellan's statement that he was not opining on self-defense. Moreover, petitioner was able to provide testimony regarding the injuries he sustained and the surgery he underwent to repair the broken orbital bone.

Again, the circuit court assessed credibility following the parties' testimony and determined that it did not need to hear Dr. McClellan's deposition. Petitioner had no other evidence to present at that time and, thus, had been fully heard on the matter. Based on the foregoing, we find no abuse of discretion in the circuit court's decision to exclude the recorded deposition of Dr. McClellan and further find that petitioner's due process rights were not violated.

Petitioner next argues that the circuit court erred in dismissing his complaint in violation of Rule 50(a)(1) of the West Virginia Rules of Civil Procedure, which provides

[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

According to petitioner, the circuit court did not have the authority to dismiss his claim under this rule as his trial was not a jury trial and, as argued above, he was not fully heard on the matter. Petitioner contends that the circuit court erroneously dismissed his case on its own initiative and without a motion for judgment as a matter of law from either party. Petitioner also cites to Syllabus Point 1 of *Jenkins v. Chatteron*, 143 W. Va. 250, 100 S.E.2d 808 (1957), which provides

"[u]pon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh-Wyoming Coal Co.*, 112 W.Va. 85 [163 S.E. 767].

Petitioner avers that, if the circuit court were attempting to dismiss the case under Rule 50(a)(1), it did not view the evidence in the light most favorable to him or otherwise it would not have ruled in favor of respondent. We disagree.

As petitioner correctly notes, the trial was not a jury trial and no party made a motion for judgment as a matter of law. Therefore, Rule 50(a)(1) is inapplicable. However, contrary to petitioner's assertions, there is nothing in the record to suggest that the circuit court relied on this rule in dismissing the claim. Rather, the circuit court reached the juncture in the proceedings where it needed to render judgment on the matter as neither party had any further evidence to present. Accordingly, the circuit court ruled in favor of respondent following the close of evidence. Therefore, we find no merit in petitioner's argument that the circuit court erroneously dismissed the case pursuant to Rule 50(a)(1). Further, to the extent that petitioner argues the circuit court prematurely dismissed the case before he could present Dr. McClellan's recorded deposition, we again note that the circuit court properly found that it did not need to hear Dr. McClellan's recorded deposition to make a determination. Therefore, we find no error in the manner in which this case was dismissed.

Petitioner lastly argues that the circuit court erred in entering the final order in violation of West Virginia Trial Court Rule 24.01. According to petitioner, respondent submitted a proposed order and, under this rule, petitioner had five days to respond with objections and exceptions. However, the circuit court entered the order only three days after receiving it and two days before petitioner was required to file objections. We find that petitioner is entitled to no relief in this regard.

West Virginia Trial Court Rule 24.01(c) sets forth that the

counsel responsible for the preparation and presentation of an order may submit the original of the proposed order to the judicial officer within eleven (11) days, with a copy to opposing counsel along with a notice to note objections and exceptions to the order within five (5) days after receipt of the proposed order or such lesser time as the judicial officer directs. Opposing counsel shall notify the presiding judicial officer, in writing, of his or her approval of or objection to the order or any portion thereof. In the event this subsection is utilized, the judicial officer shall consider the order for entry upon approval by all counsel, or after five (5) days from its receipt, if no objection is received by the judicial officer.

While petitioner is correct that the circuit court entered the final order only three days after receiving respondent's proposed order, and prior to receiving petitioner's objections, he fails to indicate what prejudice he suffered as a result. In fact, in his brief on appeal, petitioner does not cite to his proposed order, explain why his proposed order should have been entered, or argue why respondent's order is inadequate. Moreover, apart from citing Rule 24.01, petitioner cites to no authority establishing that a situation such as this is reversible or any other authority for that matter. Finally, petitioner provided the circuit court with his objections and a proposed order and notified the circuit court that it entered respondent's proposed order before waiting to see if petitioner responded pursuant to Rule 24.01. However, the circuit court did not deem it necessary to amend the final order in favor of petitioner's proposed order. Because petitioner fails to show what prejudice he suffered, we find that any error which occurred does not rise to the level of reversible error under the circumstances of this case.

For the foregoing reasons, we affirm the circuit court's October 29, 2018, final order.

Affirmed.

**ISSUED:** February 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison