# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

MINNIE HAMILTON HEALTH CARE CENTER, INC., d/b/a MINNIE HAMILTON HEALTH SYSTEM,
**Respondent Below, Petitioner**

**FILED**

**March 9, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 22-ICA-149** (CON File No. 21-5-12124-P)

HOSPITAL DEVELOPMENT CO., d/b/a ROANE GENERAL HOSPITAL,
**Applicant Below, Respondent**

**and**

WEST VIRGINIA HEALTH CARE AUTHORITY,
**Respondent**

## MEMORANDUM DECISION

Minnie Hamilton Health Care Center, Inc. dba Minnie Hamilton Health System ("Minnie Hamilton") appeals an April 29, 2022, West Virginia Health Care Authority (the "Authority") decision granting Hospital Development Co. dba Roane General Hospital ("Roane General") a Certificate of Need ("CON") authorizing it to relocate a rural health clinic from its main campus to a new site in Arnoldsburg, Calhoun County, West Virginia.[1] Respondents filed a timely response. Minnie Hamilton filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the Authority's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Roane General is a hospital with its main campus located in Spencer, Roane County, West Virginia. In addition to hospital services, Roane General operates four rural health centers ("RHCs"), two located at the hospital's main campus and two located off-campus. On July 30, 2021, Roane General completed an application for a CON, proposing a plan to

---

[1] Petitioner is represented by Robert L. Coffield, Esq. and Caleb P. Knight, Esq. Respondent Roane General is represented by Alaina N. Crislip, Esq. Respondent West Virginia Health Care Authority is represented by Katherine A. Campbell, Esq.

1

relocate one of the on-campus clinics to a site in Arnoldsburg, Calhoun County, West Virginia. The proposed relocation project would establish a new ambulatory care center with an expected capital expenditure of $439,720. In its application, Roane General's stated objectives are to improve the ability of Arnoldsburg, Chloe, and Orma, West Virginia (the "service area") residents to access primary care, cardiology, and general surgery services.

On August 26, 2021, Minnie Hamilton requested an administrative hearing before the Authority to contest Roane General's application. Minnie Hamilton operates a critical access hospital in Grantsville, Calhoun County, West Virginia, as well as a school-based clinic in Arnoldsburg.[2]

On December 1, 2021, Minnie Hamilton filed a motion to compel, requesting access to records relied upon by Roane General's population methodology expert witness in preparing its CON. At a December 7, 2021, prehearing conference, the Authority denied the motion to compel; nevertheless, a number of records were disclosed by Roane General.

The Authority held a public hearing on December 14, 2021, regarding Roane General's CON application. Roane General and Minnie Hamilton presented documentary evidence and testimony. During the hearing, one of Roane General's experts provided testimony regarding the service area's population, which encompasses multiple zip codes in Calhoun County. Minnie Hamilton disputed the sufficiency of Roane General's population calculations, arguing the calculations were based on flawed data.

Roane General also presented evidence of the service area's need for additional primary care, cardiology, and general surgery services. Again, Minnie Hamilton disagreed, arguing that Roane General failed to adequately assess the number of providers in the service area and failed to account for Minnie Hamilton's Grantsville hospital and other Calhoun County clinics.

Additionally, Roane General provided financial projections to establish the proposed RHC's financial viability and adequate staffing. However, Minnie Hamilton argued that Roane General's projections were based upon an inflated patient encounter rate and that the proposed project would be financially unfeasible. Minnie Hamilton reasoned that this alleged financial hardship would cause the project to fail to meet staffing requirements.

On April 29, 2022, the Authority issued a written decision granting Roane General's CON application, addressing each contested point in a detailed manner. The Authority's decision adopted Roane General's zip code population methodology as credible, finding

---

[2] On September 13, 2021, Minnie Hamilton filed its own CON application to open a new primary care center in Arnoldsburg, which is still pending.

that it rationally and objectively reflected the patient base for the proposed RHC. Further, the Authority found the service area had an unmet need for further health care providers, rejecting Minnie Hamilton's arguments that Roane General failed to account for other providers within Calhoun County. The Authority determined that providers identified by Minnie Hamilton were properly excluded from Roane General's calculations because they were: (1) outside the service area; (2) not providing services to the general public; or (3) not an existing provider when the CON application was filed. Additionally, the Authority concluded that Roane General's financial projections were sufficient to establish financial viability and adequate staffing, dismissing Minnie Hamilton's protests as speculative.

On May 25, 2022, Minnie Hamilton filed a request for review with the Office of Judges, which we consider in this appeal.[3]

"The specific standard of review both for the Office of Judges and, on appeal therefrom . . . is set forth in West Virginia Code § 29A-5-4(g)." *Amedisys W. Va., LLC v. Pers. Touch Home Care of W. Va., Inc.*, 245 W. Va. 398, 407, 859 S.E.2d 341, 350 (2021). West Virginia Code § 29A-5-4(g) (2021) provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Further, the factfinding determinations of an agency are entitled to deference unless clearly wrong.

> [Where] an appellate court [is] charged with reviewing the decision of an administrative agency's factfinder . . . the [appellate] court is required to

---

[3] This case is an appeal where the decision of the Authority was entered prior to June 30, 2022. However, because the Office of Judges did not decide this case prior to its dissolution on September 30, 2022, it was transferred to this Court for decision pursuant to West Virginia Code § 16-2D-16a(b) (2021).

accord deference to the hearing examiner's findings of fact unless they are "[c]learly wrong in view of the reliable, probative, and substantial evidence on the whole record[.]"

*W. Va. State Police v. Walker*, 246 W. Va. 77, __, 866 S.E.2d 142, 149 (2021) (quoting W. Va. Code § 29A-5-4(g)(5)); *see also* Syl. Pt. 1, *Muscatell v. Cline,* 196 W. Va. 588, 474 S.E.2d 518, (1996).

The proposed relocation of Roane General's RHC is subject to the Authority's CON review process.[4] *See* W. Va. Code § 16-2D-3(a)(1) (2017). A CON may be issued if the proposed service is "[f]ound to be needed; and . . . [c]onsistent with the state health plan, unless there are emergency circumstances that pose a threat to public health." W. Va. Code § 16-2D-12(a)(1)-(2) (2016). Different types of health services have different criteria that must be met, per the State Health Plan Standards, to qualify for a CON. *See* W. Va. Code § 16-2D-12(g). In the instant case, Roane General's proposed RHC is an ambulatory care center, so the Ambulatory Care Center Standards are at issue.

The Standards require proposed ambulatory care facilities to demonstrate: (1) a methodology to calculate the service area's unmet need for further medical providers, (2) that the proposed facility will not negatively impact other services or providers, (3) that the proposed services are the most cost effective alternative, (4) that the proposed services maintain compliance with applicable accreditation standards, (5) that the project is financially viable, (5) that the facility will be accessible to patients who lack adequate transportation, and (6) that less expensive alternatives to new construction have been considered.[5]

In its brief, Minnie Hamilton presents two arguments; we will address each in turn. Minnie Hamilton contends that the Authority's order was (1) insufficient in explaining the Authority's reasoning for its conclusions regarding population calculations and financial viability of the project, and (2) erroneous because the population calculations used to support Roane General's application were based upon questionable estimates.

---

[4] The Authority is named as a respondent in this matter and filed a brief. Because the Authority takes the same positions as Roane General on the issues, the Authority's brief will not be discussed separately.

[5] *See* W. Va. Health Care Auth., CON Standards: Ambulatory Care Centers Standards, (Oct. 5, 1992), https://hca.wv.gov/certificateofneed/Documents/CON_Standards/Ambulatory_Care_Centers_2_ASC.pdf.

West Virginia Code § 29A-5-3 (1964) requires that an agency in a contested case must articulate its findings and reasoning for review, providing in relevant part that:

> Every final order or decision rendered by any agency in a contested case shall be in writing or stated in the record and shall be accompanied by findings of fact and conclusions of law. . . . Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

The Supreme Court of Appeals of West Virginia has elaborated on the level of detail required in an agency's decision:

> [W]ith respect to decisions of administrative agencies following from findings of fact and conclusions of law proposed by opposing parties, . . . the agency must rule on the issues raised by the opposing parties with sufficient clarity to assure a reviewing court that all those findings have been considered and dealt with, not overlooked or concealed.

*Muscatell*, 196 W. Va. at 598, 474 S.E.2d at 528.

Upon review, we find that Minnie Hamilton's argument disputing the sufficiency of the decision is unpersuasive. The Authority issued a detailed fifty-four page decision, setting out the parties' opposing positions on each contested issue that substantively addressed Minnie Hamilton's arguments at every turn. For example, in addressing the project's financial outlook, Minnie Hamilton argued that Roane General's similar clinics were operating significantly in the red, thus questioning the project's financial feasibility. In its decision, the Authority addressed the shortcomings of Minnie Hamilton's position:

> [Minnie Hamilton] also appears to misunderstand the difference between RHC "collections" and "reimbursement," and therefore, misapprehends a fundamental and critical distinction as it related to the project's financial feasibility . . . [testimony explains] that these financial documents encompass the margin based upon *costs* versus expenses, and not *reimbursement* versus expenses . . . the financial documents cited by Minnie Hamilton are not instructive as to the financial feasibility of the project, as they do not fairly and accurately depict the financial performance of [Roane General]'s [clinics]. (Emphasis added).

Subsequently, the Authority found, and we concur, that Roane General met its burden of demonstrating financial feasibility.

Next, we find that the Authority, in its April 29, 2022, decision, sufficiently addressed Minnie Hamilton's concerns regarding the population methodology. The

Authority explicitly accepted Roane General's use of zip code-specific population data as an interpretative tool to decipher the Authority-provided county-wide population data. The Authority reasoned:

> The Authority rejects [Minnie Hamilton's] inference that the application's population analysis is flawed because the zip code reference was not specifically identified as a source in the application. The zip code reference was utilized to break down the provided population data by zip code, since zip code-specific population percentages are not provided. . . . Thus, the existence/identity of [the] zip code reference, as well as the rationale for its use to interpolate the Authority provided population data, was fully established in the record for consideration.

Further, the Authority cited three past CON applications where it had approved the use of zip code specific data, highlighting it as an accepted practice.[6]

We find that the Authority's decision satisfies the requirements of West Virginia Code § 29A-5-3, as it demonstrates consideration of each of the parties' positions, the evidence, and sufficiently sets forth the reasoning and analysis underpinning the Authority's conclusions. We find no error in the Authority's April 29, 2022, decision. Accordingly, we affirm.

Affirmed.

**ISSUED:** March 9, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

[6] Ancillary to this argument, Minnie Hamilton claims the Authority's denial of its motion to compel left it unable to properly challenge Roane General's population data. We disagree. The record reflects that Minnie Hamilton had an opportunity to cross examine Roane General's expert at the hearing and to present its own evidence. In addition, we conclude that, because the remaining evidence was "independently sufficient" to support the findings of fact, any technical evidentiary or discovery error by the Authority was harmless. *See Stephens v. Rakes*, 235 W. Va. 555, 573, 775 S.E.2d 107, 125 (2015) (quoting *McDougal v. McCammon*, 193 W.Va. 229, 239, 455 S.E.2d 788, 798 (1995)) (explaining that an evidentiary error is harmless if there is a separate evidentiary basis to support the verdict, so long as the verdict was not substantially influenced by the error).