# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: I.S., P.M., and B.A.

No. 17-0013 (Randolph County 15-JA-49, 15-JA-50 & 15-JA-51)

## MEMORANDUM DECISION

Petitioner Mother J.S., by counsel Erica Klie Kolenich, appeals the Circuit Court of Randolph County's October 25, 2016, order adjudicating her an abusing parent, and the December 9, 2016, order terminating her parental rights to three-year-old I.S., four-year-old P.M., and one-year-old B.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order. P.M.'s father, by counsel Jeremy B. Cooper, also filed a response in support of the circuit courts order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in: (1) adjudicating her an abusing parent; (2) considering expert opinions that were beyond the scope of the experts' expertise; (3) terminating her parental rights; (4) denying her motion for post-termination visitation; and (5) denying her motion for an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR filed an abuse and neglect petition against petitioner alleging that she abused and neglected I.S. because of I.S.'s unexplained injuries and petitioner's inconsistent explanations of I.S.'s injuries. The petition alleged that, on September 20, 2015, petitioner took I.S. to the Davis Memorial Hospital after I.S. collapsed. Petitioner initially told medical personnel that I.S. fell off the couch and might have hit her head on the coffee table. Medical professionals determined that I.S. had a subdural hematoma with a midline shift. Due to the nature of the injury, medical personal suspected nonaccidental trauma. Thereafter, I.S. was transferred to the West Virginia University Hospital and underwent emergency surgery wherein

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

doctors had to remove a piece of I.S.'s skull to relieve the swelling of her brain. During the underlying investigation, a Child Protective Services ("CPS") worker observed injuries to I.S.'s shoulder blade, and bruises on I.S.'s face, legs, and thigh. Petitioner provided two alternative explanations for I.S.'s injuries: that she "f[e]ll from the porch and f[e]ll in a hole." Medical staff indicated that these explanations are also inconsistent with I.S.'s injuries. On September 23, 2015, medical personnel also discovered that I.S. had multiple retinal hemorrhages, in various stages of healing. Medical staff advised CPS that these were also nonaccidental injuries that are the result of "a shaking-type injury."

Thereafter, the circuit court held two adjudicatory hearings during which multiple witnesses testified. According to multiple service providers, petitioner provided three explanations as to how I.S. sustained her injuries. Specifically, providers testified that petitioner (1) blamed another child in the home, (2) said that I.S. fell off the couch, and (3) said that I.S. fell off the porch. The testimony also showed that in addition to her subdural hematoma, workers also observed bruising on I.S.'s face, chin, chest, and legs, a burn on her shoulder blade, multiple scratches "all over her body," and a blood clot. According, to a CPS worker, I.S.'s treating physicians explained that her injuries were not consistent with petitioner's various explanations. Without objection, medical experts also testified that I.S.'s brain injury was not consistent with petitioner's explanations and not likely caused by a fall. Similarly, an ophthalmologist testified that I.S.'s retinal hemorrhages were typically associated with nonaccidental trauma, and not the result of a fall as petitioner described. Petitioner's own expert opined that it was "extremely improbable" that I.S.'s injuries were caused by a fall.

Petitioner testified on her own behalf and explained that I.S.'s injuries may have been caused when I.S. fell on three separate occasions. Moreover, petitioner explained that I.S. could have sustained the injuries while sleepwalking. Petitioner refused to acknowledge that her boyfriend may have injured I.S. However, petitioner admitted that she should have "protected I.S. more[.]" After considering the evidence, the circuit court found that petitioner's testimony was not credible. As such, the circuit court found that I.S. was abused and neglected.

In October of 2016, the circuit court held a dispositional hearing during which it heard testimony that petitioner was a good mother, that she had a bond with her children, and that she would participate in any services needed to regain the custody of her children. Furthermore, the circuit court heard proffers that while petitioner may participate in an improvement period, she would be unable to benefit from the services. Moreover, while petitioner continued to deny that she abused or neglected her children, and she failed to identify the perpetrator of the abuse. After considering the parties' argument the circuit court denied petitioner's motion for an improvement period and terminated her parental rights by order entered December 9, 2016. This appeal followed.[2]

---

[2]After the parental rights of the children's mother were terminated, I.S. and P.M. were placed with their non-offending fathers with a permanency plan to remain in their care. B.A.'s father voluntarily relinquished his parental rights. B.A. was placed in a foster home with a permanency plan of adoption by the foster family.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in adjudicating the children as abused and neglected. According to petitioner, the DHHR failed to prove that her conduct constituted abuse or neglect of the children. We disagree. An abused child is one whose "health or welfare is being harmed or threatened by [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." W.Va. Code § 49-1-201. We have also explained that

> "W.Va. Code, 49–6–2(c) [now West Virginia Code § 49-4-601], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted).

While petitioner claims the DHHR failed to prove abuse or neglect by clear and convincing evidence, the record on appeal demonstrates that petitioner and her boyfriend were the primary caregivers of the children when I.S. was injured. Further, expert testimony established that petitioner's explanations for I.S.'s injuries were inconsistent and such injuries were likely the result of nonaccidental trauma. We have held that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighting the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)). As such, the circuit court found petitioner's testimony to be not credible. Furthermore, petitioner admitted that she "should have protected [I.S.] more[.]" Thus, the record on appeal supports the circuit court's finding that there was clear and convincing evidence that I.S. was abused or

neglected. As such, we find that the circuit court did not err in adjudicating petitioner as an abusing parent.

Next, petitioner argues that the circuit court erred in considering the expert testimony of I.S.'s treating physicians because it was beyond the scope of their expertise. Specifically, petitioner asserts that the DHHR's expert witnesses testified to biomechanical issues regarding the type of force required to cause I.S.'s injuries, which was outside the scope of their expertise. We disagree. Our case law is clear that

> [t]he West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Rule 702 of the West Virginia Rules of Evidence provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Here, Doctors Casey, Serrano, and Wiley, were qualified as experts, without objection, in the fields of pediatric critical care, pediatric neurosurgery, and ophthalmology, respectively. Their testimony was not based upon biomechanical issues. Each doctor testified that, based upon their experience, and research and medical literature, I.S.'s injuries were inconsistent with petitioner's explanations. Because these experts' opinions were based upon their experience and independent research and medical literature, we find no error in the circuit court admitting their testimony.

Lastly, petitioner argues that the circuit court erred in terminating her parental rights. Petitioner's argument is premised, in part, on her claim that she did not abuse I.S. The Court does not agree. The evidence below, including the medical testimony, was sufficient to establish that the child was severely injured, even though there was no direct evidence that petitioner caused the injuries. However, there was evidence that petitioner cared for I.S. at the time the injuies occurred. While petitioner testified I.S.'s injuries may have been the result of multiple falls, it is clear that the circuit court found that petitioner's testimony was not credible. We have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, it is clear that the circuit court had sufficient evidence upon which to find that the child suffered a nonaccidental, life-threatening injury while in petitioner's care.

In addressing situations in which the identity of an abuser has not been determined, we have held as follows:

> "Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the

4

custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser." Syllabus Point 3, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. Pt. 4, *In re Harley C.*, 203 W.Va. 594, 509 S.E.2d 875 (1998). In this case, there was clearly no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected because petitioner testified that she did not injure I.S., but took no action to identify the abuser, despite the fact that child's injuries were inconsistent with her explanations. As such, we find no error in the circuit court's termination of petitioner's parental rights.

Related to this assignment of error, petitioner argues that the circuit court erred in denying her motion post-termination visitation with the children. With respect to post-termination visitation, we previously have held that

[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well[-]being and would be in the child's best interest.

Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). Under our holding in *Christina L.*, the decision to grant post-termination visitation is a discretionary one for the circuit court based on its consideration of the circumstances of the case before it. Because I.S. suffered multiple severe injuries while in petitioner's care, we find no error in the circuit court denying petitioner's motion for post-termination visitation. Similarly, it does not appear from the record that the children are of an appropriate maturity to request post-termination visitation. For these reasons, we find no error.

For the foregoing reasons, we hereby affirm the circuit court's October 25, 2016, adjudicatory order finding that petitioner was an abusing parent and the December 9, 2016, order terminating her parental rights.

Affirmed.

**ISSUED**: May 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker