# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.M.**

**No. 18-0604** (Taylor County 17-JA-79)

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.M., by counsel James E. Shay, Jr., appeals the Circuit Court of Taylor County's June 4, 2018, order terminating his parental rights to J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period, allowing the DHHR and the guardian to present evidence after resting their cases, and denying him due process and equal protection.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The DHHR alleged that petitioner had issues with alcohol abuse which endangered the child. Specifically, petitioner rode his motorcycle, while intoxicated, with the child as a passenger. Neither petitioner nor the child were wearing helmets and petitioner crashed the motorcycle, breaking four ribs and his clavicle, along with other less-serious injuries. A Child Protective Services ("CPS") worker spoke with the child, who showed the worker minor injuries sustained to his leg and knee. The child reported that petitioner was intoxicated at the time of the wreck and was driving too fast. Petitioner refused to go to the hospital following the wreck until the mother picked up petitioner and the child and took them. The child further reported that petitioner drinks frequently and that petitioner and his mother engage in domestic violence frequently. Based on these facts, the DHHR alleged that petitioner abused and/or

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

neglected his child through subjecting the child to dangerous and hazardous situations, exposing the child to domestic violence, abusing alcohol in the child's presence, and failing to protect the child and ensure his safety and well-being.

The circuit court held a preliminary hearing later in September of 2017. Petitioner waived the hearing, although the circuit court went on to question him regarding the motorcycle incident. Petitioner testified that he regularly consumes alcohol and consumes a "couple" of beers before breakfast after he returns home from working a night shift. He further admitted that he consumes between twelve and thirty beers per week. Petitioner denied having a problem with alcohol or drinking in excess. However, petitioner conceded that both doctors and family members have informed him that he drinks too much alcohol. Petitioner stated that he consumed alcohol prior to the motorcycle accident and confirmed that neither he nor the child were wearing helmets. The circuit court ordered petitioner to submit to alcohol screening and scheduled the adjudicatory hearing.

In November of 2017, the circuit court held an adjudicatory hearing. Petitioner and the mother stipulated to the allegations contained in the petition. During the circuit court's questioning, the mother stated that she believed petitioner had an alcohol abuse problem and that he drinks four to five beers after arriving home from work. The mother reported seeing petitioner drink six to ten beers on his days off. Petitioner admitted that he made a mistake in drinking a few beers prior to allowing his son to ride on a motorcycle with him, without wearing a helmet. However, petitioner denied drinking excessively and believed the proceedings would not have occurred had he been in a state that did not require the use of helmets while riding motorcycles. Counsel for petitioner requested a post-adjudicatory improvement period, to which the circuit court expressed concern due to petitioner's reluctance to comply with services and his combative nature. At that point, petitioner stated "the reason I am so combative is because [the CPS worker who filed the petition] is a liar. She put information in that paper that was not stated by my son, that is why I am so combative in your courtroom." The circuit court warned petitioner regarding his behavior before proceeding. Ultimately, the circuit court adjudicated petitioner as an abusing parent, and took his motion for an improvement period under advisement.

The circuit court held a dispositional hearing in March of 2018. A CPS worker testified that, although petitioner had not been granted an improvement period, he was offered services and had complied with parenting classes and visitation. However, although petitioner expressed the desire to comply with services, he refused to wear a continuous alcohol monitoring device, submit to drug and/or alcohol screens after November of 2017, provide medical records, attend Alcoholics Anonymous ("AA") meetings, or participate in a psychological evaluation. The worker further testified that petitioner stated that he did not understand why the proceedings were occurring and refused to cooperate with the DHHR, only attending one multidisciplinary team ("MDT") meeting during the proceedings. The worker testified that the mother reported observing petitioner under the influence of alcohol twice since the adjudicatory hearing.

A service provider testified that petitioner complied with parenting classes and visitation and demonstrated a bond with the child. The provider conceded that petitioner had issues cooperating with the DHHR. A DHHR worker testified about an incident in February of 2018 wherein petitioner became loud and aggressive when he was asked to show identification to enter

the DHHR office building. Thereafter, the DHHR and the guardian stated that they had no further witnesses. However, after further conversation, the DHHR called two more witnesses, the mother and petitioner, to correct a hearsay issue.

The mother testified that she observed petitioner to be under the influence on two occasions during the course of the proceedings. Finally, petitioner testified that the allegations of alcohol abuse were unfounded. When the DHHR informed petitioner that the circuit court made prior findings regarding his alcohol abuse at the adjudicatory hearing, he responded "[s]o it's allegation [sic] that was turned into fact overnight, magically. If that's how you want to say that then okay." Petitioner stated that he would comply with any terms and conditions of an improvement period "[a]s long as the specifics are laid out to me" but denied having an alcohol abuse problem. After hearing evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future due to his inadequate capacity to address the conditions of abuse and neglect on his own or with help. The court further found that termination of petitioner's parental rights was necessary for the child's welfare. It is from the June 4, 2018, dispositional order terminating his parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court "erred at disposition by improperly allowing the [DHHR] and guardian ad litem to present more evidence after they had voluntarily rested their cases. . . ." However, petitioner fails to cite to any authority demonstrating that the DHHR is prohibited from presenting additional evidence after it has voluntarily rested its case. Here, after presenting the testimony of several witnesses, the DHHR and guardian advised the circuit court that they had no more witnesses. Following a brief discussion regarding hearsay, the

---

[2]The mother successfully completed her improvement period and the petition against her was dismissed. The permanency plan for the child is to remain in her care.

circuit court permitted the DHHR to call more witnesses. Ultimately, the DHHR called the mother and petitioner to testify, without objection. Contrary to petitioner's assertions, the circuit court did not shift the burden to petitioner.[3] Rather, the circuit court merely allowed the DHHR to present additional evidence to correct a hearsay issue. We have previously held that

> "[t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 3, *In re J.S.*, 233 W.Va. 394, 758 S.E.2d 747 (2014). Accordingly, we find that the circuit court did not abuse its discretion and its actions were not prejudicial to petitioner as it required the DHHR to meet its burden with regard to that specific testimony, which it did by calling the mother to testify.

To the extent that petitioner argues that, absent the additional testimony, the DHHR failed to meet its burden of proving that there was no reasonable likelihood that he could correct the conditions of abuse in the near future, we note that the evidence presented prior to the DHHR's decision to rest its case established that petitioner continued to deny having an alcohol abuse problem, failed to participate in several services aimed at treating the same, refused to provide medical documentation, mischaracterized the situation, and minimized his behavior. As such, we find no merit to petitioner's argument in this regard and more fully discuss the termination of his parental rights below. We likewise find no merit in petitioner's argument that the circuit court demonstrated bias towards him in making findings that he was combative and tried to control the proceedings by wearing his military uniform. Petitioner admitted to having a combative attitude at the adjudicatory hearing and the CPS worker testified that petitioner placed conditions on his compliance with services, demonstrating that he was attempting to control the proceedings.

In sum, we find that the circuit court did not abuse its discretion in allowing the DHHR and the guardian to provide additional testimony in order to correct the hearsay issue and further find that the additional testimony was not prejudicial to petitioner's case. Accordingly, we find that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating his parental rights without first granting him an improvement period because it denied him any meaningful opportunity to establish that he had the ability to correct the conditions of abuse and neglect. According to petitioner, he stipulated to the conditions of abuse and testimony at the dispositional hearing established that he complied with some services. As such, petitioner avers that the circuit court

---

[3]*See* Syl. Pt. 2, in part, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981) ("the burden of proof in a child neglect or abuse case does not shift from the [DHHR] to the parent, guardian, or custodian of the child. It remains upon the [DHHR] throughout the proceedings.").

should have granted him an improvement period so that he could demonstrate that he could correct the conditions of abuse and that termination of his parental rights was not necessary. Petitioner further argues that the circuit court erred in failing to employ a less-restrictive alternative to termination of his parental rights. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. While petitioner was not granted an improvement period during the proceedings below, he was provided with several services such as alcohol screens, use of a continuous alcohol monitoring device, parenting classes, AA meetings, supervised visitation, and a psychological evaluation. However, petitioner stopped submitting to alcohol screens after four positive screens, refused to attend AA meetings, and failed to comply with a psychological evaluation. Moreover, the evidence established that petitioner failed to acknowledge the conditions of abuse and neglect, and demonstrated no insight to how his child was affected by his actions. Despite stipulating to the allegations contained in the petition, petitioner testified at the adjudicatory hearing and the dispositional hearing that he did not have an alcohol abuse problem. Rather, petitioner minimized his actions, accused the DHHR worker who filed the petition of lying, and stated that the proceedings would not be occurring had the motorcycle accident occurred in a state that did not require the use of helmets.

We have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640). The record demonstrates that petitioner failed to acknowledge the conditions of abuse and/or neglect and failed to comply with the many services he was offered. Accordingly, we find no error in the circuit court's decision to deny petitioner an improvement period because he failed to demonstrate that he would likely comply with the same.

We also find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental

rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have habitually abused or are addicted to alcohol . . . to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning[.]

Here, the evidence overwhelmingly demonstrates that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the near future. Petitioner continually denied having an alcohol abuse problem. When reminded that the circuit court had made a finding of fact with regard to his alcohol abuse problem, petitioner minimized the severity of the problem and stated "it's allegation [sic] that was turned into fact overnight, magically." Petitioner refused to submit to drug screens, attend AA meetings, and submit to a psychological evaluation. Further, petitioner accused the CPS worker of lying and repeatedly mischaracterized the issue as dealing with the law regarding helmet usage, claiming that the proceedings would not have happened in another state. As such, petitioner failed to respond to or follow through with any services or treatment. While petitioner argues that he should have first been granted an improvement period, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find that the circuit court did not err in terminating petitioner's parental rights.

Lastly, petitioner argues that the circuit court denied him due process and equal protection by giving disparate treatment to him and the mother. Specifically, petitioner argues that he and the mother stipulated to the conditions of abuse, but that following their adjudication the proceedings centered on petitioner and no evidence was presented that the mother corrected the conditions of abuse to which she stipulated. As such, petitioner avers that that the circuit court erred in dismissing the petition against the mother while terminating his parental rights.[4] We find no error.

---

[4]As part of his argument, petitioner asserts that the circuit court's failure to employ a less-restrictive alternative than termination of his parental rights demonstrates that his due process and equal protection rights were violated. However, as discussed above, we find no error in the

We have previously noted that

> simply because one parent has been found to be a fit and proper caretaker for his/her child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve.

*In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d 542, 561 (2000). Here, evidence was presented that the mother corrected the conditions of abuse and/or neglect. The CPS worker testified that the mother fully complied with all services and documentation from a service provider established the same. In contrast, petitioner placed conditions on his compliance with some services, refused to comply with many services, was argumentative with the DHHR, and denied the allegations of abuse and/or neglect. As such, petitioner was unable to correct the conditions of abuse and neglect, warranting a different disposition than the mother. Accordingly, we find that petitioner is entitled to no relief in this regard.

For these reasons, we find no error in the decision of the circuit court, and its June 4, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: January 14, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

circuit court's termination of petitioner's parental rights as the record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future.