**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* A.C.-1

**No. 20-0771** (Summers County 20-JA-8)

## MEMORANDUM DECISION

Petitioner Mother A.C.-2, by counsel Ryan H. Keesee, appeals the Circuit Court of Summers County's August 26, 2020, order denying her request for an improvement period and terminating her parental rights to A.C.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Amy L. Mann, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) denying her request for an improvement period, (2) terminating her parental rights during a hearing not noticed as a dispositional hearing, (3) holding a dispositional hearing before the filing of a family case plan, and (4) violating the confrontation clause.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court vacates the circuit court's August 26, 2020, dispositional order and remands the case to the circuit court for the holding of a properly noticed dispositional hearing. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to resolve the issues presented.

In April of 2020, the DHHR filed an abuse and neglect petition against petitioner and her boyfriend alleging mental health and substance abuse issues which impeded their ability to parent

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as A.C.-1 and A.C.-2, respectively, throughout the memorandum decision.

the children.[2] The DHHR alleged that petitioner was housebound due to her mental health issues, forcing the children to care for her. The DHHR also alleged that the children were planning on running away because of these conditions. Specifically, the DHHR alleged that A.C.-1 had been isolated, engaging in self-harm, and suffering from her own mental health issues which petitioner and the boyfriend failed to address.

The circuit court held a preliminary hearing in April of 2020 wherein a Child Protective Services ("CPS") worker testified that she received a referral that petitioner was not caring for the children. The CPS worker testified she went to petitioner's residence and spoke to the children who said they feared for their lives and felt unsafe in the home. The CPS worker further testified that A.C.-1 had been home schooled for two years, was behind in her studies, and was isolated from the outside world due to petitioner's mental health issues. The worker also noted that A.C.-1 was cutting herself and that petitioner had not sought any mental health services for the child. The worker testified that the children also complained of bed bugs. The worker then testified that petitioner was incoherent and prone to mood swings. The CPS worker noted the boyfriend admitted that neither he nor petitioner had sought any mental health services for A.C.-1. The CPS worker executed a seven-day protection plan for the children, placing the children with their respective grandparents. The worker testified that petitioner continuously contacted the children during the safety plan and blamed A.C.-1 for the situation. Next, A.C.-1's grandmother testified and confirmed that petitioner called A.C.-1 on the telephone and blamed her for DHHR's intervention to the point that the child no longer wished to speak with petitioner. The grandmother, who is petitioner's mother, acknowledged that petitioner had mental health and substance abuse issues. After the presentation of evidence, the circuit court found that A.C.-1 was engaging in self-harm and needed mental health treatment. The circuit court further found that petitioner was blaming A.C.-1 for the conditions at home causing the child to fear returning home. As a result, the circuit court found probable cause to continue the placement of A.C.-1 with her grandmother.

The circuit court held a series of status hearings between May and August of 2020. At the first status hearing in May of 2020, the circuit court denied petitioner's request to represent herself throughout the proceedings and ordered that she participate in a psychological evaluation. Petitioner failed to appear at a status hearing held in June of 2020, and the circuit court was informed that petitioner also failed to attend her psychological evaluation. The circuit court held a final status hearing in August of 2020, where petitioner again failed to appear. The DHHR also informed the court that petitioner had failed to attend a recent multidisciplinary team meeting and still had not completed her psychological evaluation. While the circuit court permitted petitioner's psychological evaluation to be rescheduled due to potential miscommunications, the circuit court denied petitioner's motion for a preadjudicatory improvement period due to her failure to cooperate and participate with the DHHR. At the conclusion of the hearing, the DHHR gave notice pursuant to Rule 32(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings that it would move to terminate petitioner's parental rights in an accelerated dispositional hearing immediately following the adjudicatory hearing should she fail to appear again.

---

[2]The proceedings in circuit court concerned additional children who are not petitioner's biological children. Petitioner raises no assignment of error regarding these children. Accordingly, these children are not the subject of this memorandum decision.

The circuit court held an adjudicatory hearing in August of 2020 wherein petitioner failed to appear, and counsel for petitioner proffered that she did not know petitioner's whereabouts. Under questioning from the circuit court, petitioner's counsel admitted that she had not been in contact with petitioner. Next, a CPS worker testified that petitioner failed to appear for her rescheduled psychological evaluation. The CPS worker further testified that she had had no contact with petitioner and that petitioner failed to cooperate with the DHHR. Finally, the CPS worker testified that petitioner had not visited with the children. After the CPS worker testified, the circuit court also took judicial notice of a different CPS worker's testimony from the preliminary hearing.

In light of the evidence, the circuit court found that petitioner abused and neglected A.C.-1 by the clear and convincing evidence presented. The circuit court also found that petitioner failed to participate or cooperate with any service providers, the DHHR caseworkers, or even her own counsel, and, as a result, the court proceeded directly to disposition. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the child to terminate petitioner's parental rights. The court's August 26, 2020, dispositional order reflected this termination.[3] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a preadjudicatory improvement period because additional time could have allowed her time to separate from her boyfriend and to participate in a psychological evaluation. Petitioner also argues that the child was placed in the custody of the nonabusing father, so there was no further risk to the child. In light of these claims, she argues that the circuit court erred in failing to grant her a preadjudicatory improvement period. We disagree.

---

[3]The father is a nonabusing parent and has custody of the child. The permanency plan for the child is to remain in the custody of her father.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(1)(B) provides that the circuit court may grant a parent a preadjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we find that she did not demonstrate that she was likely to fully participate in an improvement period. The circuit court found that petitioner failed to cooperate or participate in any services offered by the DHHR and its service providers. Additionally, petitioner failed to attend several critical hearings throughout the proceedings, including the adjudicatory/accelerated dispositional hearing where her rights were terminated. Specifically, the DHHR warned petitioner it would pursue termination of her parental rights if she did not attend the adjudicatory hearing. While petitioner attended the preliminary hearing in April of 2020 and one status hearing the following month, petitioner failed to attend any subsequent hearings and left her own counsel in the dark as to her whereabouts. Further, petitioner failed to attend scheduled multidisciplinary team meetings and failed to complete her psychological evaluation despite the fact that the circuit court provided petitioner additional time to complete a psychological evaluation after a "miscommunication" occurred. Petitioner argues that her absence from several hearings and lack of participation is a reflection that she "never fully understood the judicial process" and that her boyfriend interfered with her ability to communicate with others. However, petitioner provides no evidence to support these allegations. Petitioner was represented by counsel, first court-appointed counsel and later retained counsel, throughout the proceedings. Yet, at no time did either of petitioner's counsel allege that the boyfriend or others interfered with his ability to communicate with petitioner. As such, there is ample evidence that, throughout the proceedings, petitioner chose to avoid hearings and to participate in any services. Given this evidence, we find no error in the circuit court's decision to deny petitioner a preadjudicatory improvement period.[4]

---

[4] Given that we find that vacation of the circuit court's dispositional order is warranted due to the reasons set forth below, nothing in this order prevents petitioner from moving for a new improvement period in the circuit court on remand.

Next, petitioner alleges that the circuit court erred in terminating her parental rights. Petitioner argues that the "evidence in this case is just too scant" and that the circuit court erred in terminating her parental rights without requiring the DHHR to file a family case plan. We agree with petitioner's arguments.

Although the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provide that a circuit court may proceed to disposition immediately following adjudication, there are certain requirements that must be met. Specifically, Rule 32(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides:

The disposition hearing immediately may follow the adjudication hearing if:

(1) All the parties agree;

(2) A child's case plan meeting the requirements of W. Va. Code §§ 49-4-408 and 49-4-604 was completed and provided to the court or the party or the parties have waived the requirement that the child's case plan be submitted prior to disposition; and

(3) Notice of the disposition hearing was provided to or waived by all parties as required by these Rules.

Further, Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings sets forth that "[n]otice of the date, time, and place of the disposition hearing shall be given to all parties, their counsel, and persons entitled to notice and the right to be heard." Here, the circuit court noticed the August 24, 2020, hearing as an adjudicatory hearing in its order following a status hearing.

We have previously held that

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). The record demonstrates that the circuit court proceeded to disposition without determining if the parties were in agreement or if notice of the hearing was waived. In fact, petitioner was absent from the status hearing and, thus, could not have agreed to the accelerated hearing or waived her right to the case plan's filing or notice of the dispositional hearing. By proceeding immediately to disposition in the case, the circuit court ignored Rules 31 and 32, as set forth above. We have previously held that notice of the dispositional hearing is mandatory and that an accelerated dispositional hearing may be held only when the conditions of Rule 32 are met. *See In re Travis W.*, 206 W. Va. 478, 483, 525 S.E.2d

5

669, 674 (1999) (holding that a circuit court's failure to comply with Rules 31 and 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings was a substantial disregard of process and required remand). Accordingly, we find that because the circuit court substantially disregarded the process established by those rules, the resulting dispositional order must be vacated, and the case must be remanded for compliance with that process.

Additionally, petitioner argues the circuit court erred in not allowing her to confront witnesses against her as required by the United States and West Virginia Constitutions because the circuit court used videoconferencing instead of holding in-person proceedings. We find no error.

We have set forth the following standard of review regarding questions of admissibility:

> "The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). We have also held that "[t]he fundamental requirement of procedural due process in a civil proceeding is 'the opportunity to be heard at a meaningful time and in a meaningful manner.' *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976)." *Id.* at 402, 758 S.E.2d at 755.

Here, we find that petitioner was afforded procedural due process throughout the proceedings, despite the use of videoconferencing. At the time of the lower court proceedings, this Court's March 22, 2020, Administrative Order declaring a judicial emergency due to the COVID-19 crisis was in full effect. The circuit court followed this guidance, which ordered state courts to halt all but emergency hearings and to conduct emergency hearings virtually, whenever possible. This order also suspended any court rules which had disallowed the use of technology to conduct remote hearings. The judicial emergency was again extended by this Court on April 3 and April 22, 2020. On May 6, 2020, this Court issued an "Administrative Order Re: Resumption of Operations," which stated that although in-person hearings could resume, "[r]emote hearings and proceedings should be permitted and encouraged." Thus, the circuit court had full discretion in determining whether to resume hearings and whether to conduct hearings virtually. While petitioner argues that the use of virtual hearings was "devastating" to her ability to understand and participate in the proceedings, the use of teleconference technology did not prevent her participation in the preliminary hearing, where testimony was taken. Nor did virtual hearings prevent petitioner from appearing at a status hearing in May of 2020. Petitioner argues that, due to the virtual proceedings, she could not discuss the proceedings with counsel in real time and she was more susceptible to misinformation from her boyfriend. However, petitioner provides no evidence to support these allegations. Further, nothing in the Court's judicial emergency order prevented petitioner from appearing with her counsel together at a remote location. Moreover, petitioner failed to object or to raise any issue with the circuit court regarding the virtual proceedings. Not only is petitioner's argument without merit, she has waived this issue by failing

to object to the virtual hearings at any point in the proceedings. *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999).").

Finally, petitioner argues that the circuit court erred by depriving her "of effective representation and therefore the right to confront witnesses at her [p]reliminary [h]earing." Specifically, petitioner argues that her interests differed from the boyfriend, despite the fact that they shared counsel. Petitioner later obtained separate counsel and argues that the circuit court erred in allowing a DHHR caseworker to testify during the preliminary hearing when she did not have separate counsel from the boyfriend. Petitioner argues that the circuit court "compounded" this error by taking judicial notice of the caseworker's testimony at the final adjudicatory hearing because her new counsel did not have the opportunity to cross-examine the caseworker. Further, petitioner argues that the DHHR introduced evidence of third-party testimony, that of A.C.-1, without addressing the presumption of "potential psychological harm." Petitioner argues that the circuit court erred by allowing the DHHR caseworker to testify as to statements made to her by the children. Due to our decision to vacate the circuit court's final order, we decline to address these assignments of error at this time. However, the circuit court will hold a new dispositional hearing in this matter where petitioner will be free to confront witnesses or to raise these issues with the circuit court.

For the foregoing reasons, we vacate the dispositional portion of the circuit court's August 26, 2020, order, insomuch as it relates to petitioner's parental rights,[5] and remand this matter to the circuit court for the holding of a properly noticed dispositional hearing, and for further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[5]This memorandum decision vacates the circuit court's August 26, 2020, order as it relates to petitioner only and does not affect the rights of any other parties named in that order.