**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.G., B.G.-1, B.G.-2, and J.A.**

**No. 21-0141** (Wood County 19-JA-252, 19-JA-253, 19-JA-254, and 20-JA-13)

**MEMORANDUM DECISION**

Petitioner Mother S.H., by counsel Debra L. Steed, appeals the Circuit Court of Wood County's January 20, 2021, order terminating her parental rights to T.G., B.G.-1, B.G.-2, and J.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Jeffrey B. Reed, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in certain procedural and evidentiary rulings, denying her motion for an extension of her post-adjudicatory improvement period, denying her motion for a post-dispositional improvement period, and relying on recommendations from the guardian and the DHHR.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we refer to them as B.G.-1 and B.G.-2, respectively, throughout this memorandum decision.

1

In December of 2019, the DHHR filed an amended petition to include allegations that petitioner and her boyfriend abused and/or neglected petitioner's three children.[2] According to the amended petition, Child Protective Services ("CPS") visited the home and found it to be in an unsafe condition. Specifically, CPS indicated that it was difficult to even enter the home because of "piles of dirty laundry, toys, books, boxes full of clothes, and trash in the front room." According to the petition, "the family had a small tunnel-like pathway through the piles that led through the home." Although the three children[3] had their own bedroom, CPS indicated that it was almost entirely full of boxes and other material. It appeared that the children slept on three toddler mattresses in the living room that had no sheets or bedding. CPS also observed unsanitary conditions in the kitchen, including dead cockroaches and improperly stored food in the refrigerator. The boyfriend admitted that the home lacked running water, leading CPS to observe a bucket in the bathroom that contained human feces. The bathtub was full of cigarette butts.

While CPS inspected the home, petitioner and the boyfriend continually yelled at the children to clean the home "despite the fact that the messes and clutter in the home were not anything that the children could have or should have attempted to clean up due to multiple safety risk[s] and health hazards." CPS also noted that then-nine-year-old T.G. was "soaking wet with urine," and petitioner and the boyfriend reported that the child had been suffering incontinence issues as reported by the Boys and Girls Club. CPS also informed petitioner and the boyfriend that it had received a referral that the boyfriend physically abused the children, which the boyfriend denied. However, CPS noted that T.G. appeared to be frightened of the boyfriend. CPS then spoke with the children privately, at which point T.G. informed CPS that the boyfriend was lying and had physically abused him by beating him with a belt and dragging him across the floor. B.G.-1 also disclosed physical abuse by the boyfriend, and B.G.-2 indicated that she witnessed this abuse. B.G.-2 also indicated that petitioner witnessed this abuse.

Ultimately, police arrived on the scene after the boyfriend displayed a handgun tucked in his waistband and told CPS he "would do anything to protect his family." CPS admitted that the boyfriend did not directly threaten them but stated that they felt threatened by the action, nonetheless. Once CPS obtained emergency custody, they discovered a rash on two of the children and took them for a medical examination. B.G.-1 was diagnosed with ring worm on his feet and legs, T.G. had an unspecified skin irritation likely caused by his incontinence, and B.G.-2 was diagnosed with head lice. When medical personnel attempted to examine T.G., the child "got on the ground in a fetal position and was crying uncontrollably."

During the CPS investigation, the boyfriend informed workers that he feared petitioner would react negatively to the children's removal and had previously thrown a can of soup at his head. According to the boyfriend, petitioner was "paranoid and has thought people were in the

---

[2]Petitioner did not include the initial petition in the appendix record on appeal. It appears that the original petition concerned a child that is not at issue in this appeal.

[3]At the time this petition was filed, J.A. was not yet born.

back[]yard." CPS asked the boyfriend if petitioner was abusing drugs, which the boyfriend denied, although he claimed that she kept "a 'pharmacy' in her purse[] of pills that were prescribed to her." Based on these facts, the DHHR alleged that petitioner failed to provide safe and adequate housing for the children, failed to protect them from the boyfriend's physical abuse, and neglected the children's medical needs and hygiene. Following the amended petition's filing, petitioner waived her right to a preliminary hearing.

In January of 2020, the DHHR filed a second amended petition to include J.A. in the proceedings following his birth.[4] The DHHR alleged that the mother tested positive for THC twice shortly before the child's birth. The DHHR also included additional allegations concerning the other children. Specifically, the three older children underwent interviews after their removal, during which they detailed additional instances of physical abuse that petitioner perpetrated. According to T.G., petitioner "would whip him with a tree branch" that left marks. B.G.-1 disclosed that petitioner "would watch [her boyfriend] hurting them and would not do anything to stop it." T.G. and B.G.-1 also indicated that they were afraid of petitioner. Further, B.G.-1's foster parent informed CPS that the child was taken for medical treatment for an ear condition. Upon having the ear irrigated, "parts of brown bugs . . . with broken pieces of legs and antenna[e] . . . came out." Petitioner again waived her right to a preliminary hearing in regard to this petition.

At an adjudicatory hearing in February of 2020, petitioner stipulated to the allegations in the petitions and did not contest the fact that the children were abused and neglected. The court then found that all the children were abused and neglected children and that petitioner was an abusive and neglectful parent. The court further granted petitioner a post-adjudicatory improvement period. At a hearing the following month, the parties entered the terms and conditions of the improvement period on the record, including the requirements that petitioner sign all releases for information; attend all court hearings and scheduled appointments; obtain and maintain a residence and environment that is safe and stable for the children, has utilities, and is free of trash, clutter, and other safety concerns; submit to a parental fitness examination and follow any recommendations incorporated into the case plan; participate in individualized parenting and adult life skills education; attend visits; undergo a Batterers Intervention Prevention Program ("BIPP") evaluation; submit to a substance abuse evaluation and follow all recommendations thereof; and participate in individualized therapy, among other requirements.

Over the next several months, the court held review hearings and permitted petitioner's improvement period to continue. During this period, petitioner and her boyfriend indicated that they intended to separate, although evidence throughout the remainder of the case established that they continued their relationship. Despite the court's extension to the improvement period, the DHHR filed a progress report for a May of 2020 hearing that indicated petitioner tested positive for marijuana.

---

[4]Petitioner's boyfriend is J.A.'s father. However, for ease of reference, this individual will be referred to as "boyfriend" throughout this memorandum decision.

Further, in a court summary for a July of 2020 hearing, the DHHR indicated that petitioner's home was still not appropriate and that she was instructed on how to improve its condition. According to the DHHR, petitioner refused to allow the DHHR access to her bedroom. The report also noted concerns about petitioner's participation in parenting services and "acknowledgment of her issues" that needed to be addressed. The DHHR also raised continuing issues with petitioner's home, indicating that the home was "still in need of work" even though the DHHR explained what could be improved. Petitioner again refused to permit CPS to inspect her bedroom. According to the DHHR, CPS spoke with petitioner's therapist about addressing concerns over hoarding. Finally, the visitation provider reported that petitioner said inappropriate things to the children regarding the CPS case and, despite instruction that the children wished to engage with her, failed to engage and nurture the children. The provider also asserted that petitioner "continue[d] to make excuses for her actions" and "blame[d] the older children's father for her having a CPS case and for the children's behaviors." Based on these facts, the provider concluded that petitioner failed to accept responsibility for her actions. Relevant to petitioner's arguments on appeal, she alleges that the DHHR's report for the July of 2020 hearing was submitted to the parties at 1:08 a.m. the day prior to the hearing. Petitioner requested a continuance in order to review the report, but the request was denied. Regardless, the circuit court permitted petitioner's improvement period to continue following this hearing.

Finally, in September of 2020, the DHHR indicated that petitioner had made some progress in the home, but that it still smelled of urine and contained mold and cockroaches. The DHHR also addressed petitioner's parental fitness evaluation, which concluded that petitioner's prognosis for improved parenting was extremely poor. This was based on petitioner's "utter failure to accept responsibility, her justification of her actions and those of [her boyfriend], her blatant accusation that the children are lying, and her refusal to acknowledge that she has any significant changes to make as a parent." Specifically, petitioner denied ever having seen her boyfriend strike the children with a belt even though she also claimed that she never left the children alone with him. When asked if she thought she had done anything abusive or neglectful, petitioner was unequivocal that "[t]here was no abuse in the house." The DHHR also noted that petitioner's comments during the evaluation created "significant concerns regarding possible retaliation against the children, concerns for future abuse[,] and concerns that [petitioner] will only separate from [her boyfriend] while under the scrutiny of CPS and the [c]ourt." Despite the children's stated fear of petitioner's boyfriend, petitioner explained that the children "smile and laugh when he's around." Petitioner's visitation provider also reported that her visits "lack nurturing, love, and affection towards the children."

That same month, the court held another review hearing, during which the DHHR recommended that the court deny petitioner a further extension of her improvement period. The court found that petitioner had not substantially complied with the terms and conditions of her improvement period and denied her request for an extension. Shortly after this hearing, petitioner filed a motion for a post-dispositional improvement period.

Beginning in October of 2020, the court held a series of dispositional hearings that concluded in January of 2021. After hearing extensive evidence, including testimony from multiple DHHR workers and service providers, the court denied petitioner's request for a post-dispositional improvement period because she could not establish a substantial change in

4

circumstances such that she was likely to fully comply. According to the court, it was initially prepared to grant a post-dispositional improvement period, but subsequently came to the determination that petitioner "lack[s] credibility and honesty." Specifically, the court addressed petitioner's contention that she and her boyfriend ended their relationship, finding that "the number of encounters that these . . . parents had in a very short period of time means nothing more than these . . . parents are in a continued relationship." The court also found that "one of the most believable witnesses" was the boyfriend's mother, who made it clear that she was testifying in the children's best interests. The court noted that the grandmother was "in a tough position" given that she was testifying against her son's interest. Regardless, the grandmother testified that petitioner's boyfriend admitted he was still in a relationship with petitioner. The court further addressed petitioner's unwillingness to admit that her conduct was abusive or neglectful, as she denied that any abuse occurred in the home. Based on the evidence, the court was "unable to find that . . . [petitioner was] progressing in any manner through the improvement period that is going to correct the conditions that led to the abuse and neglect." The court further found that petitioner failed to follow through with the case plan and that termination of her parental rights to the children was necessary for their welfare. Accordingly, the court terminated petitioner's parental rights to the children.[5] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the court erred in certain procedural and evidentiary rulings. First, petitioner argues that the court should have granted her a continuance of the review hearing from July of 2020 because her counsel did not receive the DHHR's court report until shortly before the hearing and petitioner was not present. Petitioner cannot be entitled to relief on

---

[5]All parents' parental rights were terminated below. The permanency plan for the children is adoption in their current foster homes.

appeal, however, because her counsel agreed that a continuance was not necessary below. After moving for additional time to review the document, the court proposed that it "conditionally admit the reports and allow [c]ounsel 10 days to review the reports and submit any objections in writing." The court asked counsel if this was acceptable, and petitioner's attorney replied, "That is fine." As such, she is entitled to no relief.

Similarly, petitioner argues that the circuit court "[d]en[ied] access for the personal appearance of counsel and her client" at a December of 2020 dispositional hearing. However, the record contains no denial of access, as petitioner claims. Instead, petitioner and her counsel appeared for the hearing remotely. Upon observing other parties in physical attendance, petitioner expressed a preference for being in physical attendance. The court, however, indicated that time was an issue and expressed that there was no "harm in some individuals being present in the courtroom and some being present by Microsoft Teams." The court then ruled that "[w]e are going to go ahead and proceed as we are." Petitioner did not object to this ruling, again waiving her right to raise this issue on appeal.

Finally, petitioner argues that the court erred in sustaining an objection to her question about whether the DHHR informed petitioner when the children were moved into new foster homes. The guardian objected to the relevance of the question, and the court sustained the objection. Petitioner is correct that West Virginia Code § 49-4-610(6) provides that a court may extend a post-adjudicatory improvement period when a court finds, among other things, "that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child." What petitioner fails to recognize is that her question regarding whether she was notified of each discrete change to the children's temporary placement had no relevance to this issue. As we have previously held, circuit courts are granted significant discretion in making evidentiary rulings. Syl. Pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995). Because petitioner cannot establish an abuse of this discretion, she is entitled to no relief. Further, as more fully addressed below, petitioner could not establish that she substantially complied with the improvement period such that an extension was warranted.

Petitioner's argument in support of her assertion that she should have been entitled to an extension of her post-adjudicatory improvement period relies almost entirely on testimony from her therapist, which petitioner cites in order to assert that the DHHR did not cooperate with the therapist or provide the therapist with sufficient materials. Petitioner also argues that the therapist did not integrate the recommendations from the parental fitness evaluation into petitioner's treatment or provide therapeutic reunification therapy. Based on these assertions, petitioner concludes that the DHHR ignored the specific goals of the improvement period and that an extension was warranted to remedy these deficiencies. We do not agree, however, because the record shows that petitioner was not substantially compliant.

In accordance with West Virginia Code § 49-4-610(6), a court may extend a post-adjudicatory improvement period "when the court finds that the [parent] has substantially complied with the terms of the improvement period." Further, this Court has explained that "before a circuit court can grant an extension of a post-adjudicatory improvement period, *the court must first find* that the respondent has substantially complied with the terms of the

6

improvement period." Syl. Pt. 2, *In re J.G.*, 240 W. Va. 194, 809 S.E.2d 453 (2018) (emphasis added) (citation omitted). Here, the record is devoid of such a finding. While petitioner cites to alleged deficiencies in her services, the record is clear that petitioner failed to fully participate in the services offered and, most importantly, refused to accept responsibility for her conduct by denying that any abuse ever occurred in the home. Petitioner is correct that she complied with parenting services, but she ignores the fact that her parenting provider raised concerns about her ability to correct the conditions of abuse and neglect as a result of this refusal. Petitioner's parental fitness evaluation reinforced these concerns, concluding that petitioner not only refused to accept responsibility, but also made excuses for her behavior and accused the children of fabricating their disclosures. As we have explained,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, the circuit court found that petitioner was not progressing in her improvement period and that her refusal to acknowledge the conditions of abuse and neglect necessitated denial of her request for an extension. We find no abuse of discretion in this ruling.

Petitioner next argues that the circuit court erred in denying her request for a post-dispositional improvement period. In support of this assignment of error, petitioner argues that she was making improvements in her parenting classes, attended all visits, and was bonded with the children. According to petitioner, she would have benefitted from additional services, especially considering the fact that this Court emphasizes a parent's compliance and interest in visiting children when determining if improvement periods are warranted. What petitioner fails to argue on appeal, however, is how she satisfied the applicable burden for obtaining a post-dispositional improvement period. According to West Virginia Code § 49-4-610(3)(D), in order to obtain a post-dispositional improvement period after having already been granted an improvement period, a parent must "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and "that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." On appeal, petitioner does not acknowledge this heightened burden. Instead, she simply argues that her compliance with her post-adjudicatory improvement period was sufficient to obtain a second improvement period. Having already found petitioner's compliance with her post-adjudicatory improvement period to be lacking, we similarly find that this evidence is insufficient to satisfy the higher burden necessary to obtain a second improvement period. Further, the court was vested with discretion in ruling on petitioner's motion, and we find no abuse of that discretion. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). As such, she is entitled to no relief.

Next, petitioner argues that the circuit court erred in relying on recommendations from the guardian. Petitioner fails, however, to identify exactly what recommendation the guardian made or cite to any evidence that the circuit court relied upon such recommendation. In support of this assignment of error, petitioner takes issue with the guardian's reporting, claiming that it fails to comply with the West Virginia Trial Court Rules and the guidelines for guardians in abuse and neglect proceedings. Petitioner's main concern is the guardian's admitted lack of interviews with the children. According to Appendix A of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, guardians have a duty to conduct an independent investigation into the facts of the case, which may include, when appropriate, interaction with the children. Petitioner appears to argue that because the guardian did not talk to the children in this matter, that any information contained in the guardian's report lacked value. However, petitioner ignores the fact that the guardian testified to his independent investigation, which included interviews with the children's foster parents and the children's counselors on several occasions. Even more importantly, petitioner's argument that "the children may have expressed a desire to return to their mother" is not only speculative, but also ignores the fact that the three older children—then ranging in age from eight to ten years old—were not of sufficient age for the court to consider their wishes. According to West Virginia Code § 49-4-604(c)(6)(C), "the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." Petitioner cites to no evidence that would indicate any of the children were of such age of discretion that the court was required to consider their wishes. As such, she is entitled to no relief on appeal. Although we find that petitioner is not entitled to relief in regard to this argument, we nonetheless instruct that many of the requirements found in Appendix A anticipate guardians meeting with the children involved in abuse and neglect proceedings. Although several of these requirements are prefaced by the caveat "when necessary," we nonetheless caution that a thorough investigation into the facts of abuse and neglect matters will usually necessitate personal interaction between guardians and the children. However, there is nothing in the record before this Court that indicates such interaction was necessary in this specific case, but we nevertheless direct guardians to make every effort to interact with children, as such interaction is often necessary to facilitate the thorough investigation required of guardians in all such cases.

Finally, petitioner argues that the circuit court erred in relying on recommendations from the DHHR and guardian that petitioner and her boyfriend had to separate because she alleges that less-restrictive means could have been utilized in order to reunite both her and her boyfriend with the children. Petitioner again argues that the DHHR's services in regard to her ongoing relationship with her boyfriend were deficient because the DHHR had not yet implemented all the recommendations of the BIPP service provider. She further speculates that additional services could have remedied both her and her boyfriend's issues that resulted in the children's abuse. These arguments do not, however, entitle petitioner to relief. Again, it is important to note that petitioner was not fully compliant with the extensive services she was offered, so her assertion that implementing even more services could have potentially resolved not only her issues but also those of her boyfriend—whose own parental rights to J.A. and "any guardianship and/or custodial rights he may have to" T.G., B.G.-1, and B.G.-2 were also terminated—is not persuasive. As this Court has routinely explained, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child

will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted).

Petitioner also argues that respondents focused their attention on the separation of the parties, even though this was not a requirement of her improvement period. While petitioner is correct that she was never formally required to separate from her boyfriend, the fact remains that he physically abused the children and refused to accept responsibility for this conduct. Further, the record shows that the children were afraid of the boyfriend. As such, it is unclear why petitioner believes that her refusal to place her children's needs ahead of her desire to remain in a relationship with someone who physically abused her children and demonstrated no capacity to improve that behavior is not relevant evidence upon which to base termination of her parental rights. Additionally, petitioner was dishonest about the ongoing relationship. Accordingly, the court ultimately found that her testimony lacked credibility, a determination we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As such, petitioner is entitled to no relief on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 20, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 27, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton